**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Spiver Whitney GORDON,**
**Defendant-Appellant.**

**No. 85–7726.**

United States Court of Appeals,
Eleventh Circuit.

June 2, 1987.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and ESCHBACH *, Senior Circuit Judge.

PER CURIAM:

The defendant, Spiver Whitney Gordon, was convicted, following a jury trial in October 1985 in Tuscaloosa, Alabama, on four counts: two counts of mail fraud for placing in the mail an envelope containing a fraudulently marked primary election ballot, 18 U.S.C.A. § 1341; and two counts of furnishing false information to the Absentee Election Manager in order to permit a vote· by absentee ballot in the Alabama Primary Election. 42 U.S.C.A. § 1973i(c). We vacate and remand for an evidentiary hearing on Gordon's selective prosecution claim, and on his claim that it was discriminatory for the Government to use all six of its peremptory challenges to exclude every black venireperson from the petit jury. The four other claims asserted on appeal would not require a reversal.

## I. *Selective Prosecution Claim*

The district court denied an evidentiary hearing on the selective prosecution claim. To support a defense of selective or discriminatory prosecution, a defendant must establish *first*, that he has been singled out for prosecution while others similarly situated have not generally been proceeded against for the type of conduct with which he has been charged, and *second*, that the decision to prosecute was invidious or in bad faith because it was based upon an impermissible factor such as race. *See Wayte v. United States*, 470 U.S. 598, 608–09, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985); *Oyler v. Boles*, 368 U.S. 448, 455–56, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962); *United States v. Pleasant*, 730 F.2d 657, 663 (11th Cir.), *cert. denied*, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974). In an effort to support his claim, Gordon sought a hearing and disclosure of Government records based on affidavits and significant other evidence

Carlos A. Williams, Chestnut, Sanders, Sanders, Turner, & Williams, J.L. Chestnut, Birmingham, Ala., C. Lani Guinier, NAACP Legal Defense Fund, John Charles Boger, Morton Stavis, Center for Constitutional Rights, New York City, for defendant-appellant.

Frank W. Donaldson, U.S. Atty., John Ott, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

that show the Government chose to prosecute him and other black political leaders in Alabama's majority-black "Black Belt" counties for voting fraud, while not prosecuting county residents who were members of a rival white-dominated political party and committing similar election offenses.

The magistrate assigned to this case considered motions and evidence submitted by Gordon and other defendants regarding the selective prosecution claim. The magistrate found that the defendants "have presented some evidence of similar violations by other persons who have not yet been prosecuted." The magistrate went on to conclude "that the defendants have made a showing of a 'colorable entitlement' as to the first prong of the selective prosecution, however tenuous that showing may be." As to the second or bad faith prong of the selective prosecution test, the magistrate, despite noting that some affidavits referenced the illegal voting of absentee ballots of whites and that "no serious scholar would ever be tempted to point to the areas covered by these materials as paradigms of democratic government, either now or in the past," determined that the defendants presented insufficient direct evidence of prosecutorial invidiousness. The magistrate rejected a "results" test, whereby "invidiousness would be shown by virtue of the fact these defendants are being prosecuted while some others are not."

The district court adopted the magistrate's findings and recommendations. On appeal, the Government relies on the magistrate's recommendation, which found that Gordon met only the first prong of the selective prosecution test. Thus, the real nub of dispute is whether the district court erred in adopting the magistrate's recommendation that Gordon had not presented enough evidence to establish a "colorable basis" of invidiousness.

The record reveals that the district court erred for two reasons in adopting the magistrate's recommendation as to the invidious prong. *First,* Gordon presented sufficient evidence to establish a "colorable entitlement" for a selective prosecution claim,

or as one court has held, sufficient facts "to take the question past the frivolous state and raise[s] a reasonable doubt as to the prosecutor's purpose." *United States v. Hazel,* 696 F.2d 473, 475 (6th Cir.1983) (quoting *United States v. Larson,* 612 F.2d 1301, 1304–05 (8th Cir.), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980)). Gordon presents one piece of direct evidence, a statement made by a Department of Justice spokesperson who allegedly explained to a college student that the investigations were part of a "new policy ... brought on by the 'arrogance on the part of blacks' in these counties." This statement standing alone would not be enough, but assumes significance in light of other evidence suggesting a pattern of Government activity in the voting fraud cases that were prosecuted. Gordon presented evidence to show that the Government targeted only those counties where blacks were a majority, specifically targeting those counties where blacks since 1980 had come to control some part of the county government. Within those counties, the individuals targeted were members of the black majority faction. The members of the rival white political organization assisted law enforcement officials in their investigations of the Greene County Civil League, the principal political organization representing blacks, of which Gordon was a leader.

■ The evidence submitted indicates that Gordon has sufficiently established the essential elements of the selective prosecution test to prove a "colorable entitlement" to the defense. *United States v. Murdock,* 548 F.2d 599 (5th Cir.1977); *United States v. Berrigan,* 482 F.2d 171, 181 (3d Cir.1973). Thus, Gordon is entitled to an evidentiary hearing on the selective prosecution claim so the full facts may be known. Gordon is entitled to discovery of the relevant Government documents relating to the local voting fraud cases the Government has prosecuted and any voting fraud complaints which they have decided not to pursue.

■ The second error the district court made in adopting the magistrate's recom-

mendation on the absence of invidiousness was the magistrate's rejection of racial impact or results evidence. In deciding if a defendant has established selective prosecution, a court must undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). "Circumstantial evidence of invidious intent may include proof of disproportionate impact." *Batson v. Kentucky*, —— U.S. ——, ——, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69, 85 (1986) (citing *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976)). Indeed, under some circumstances proof of discriminatory impact "may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds." *Washington*, 426 U.S. at 242, 96 S.Ct. at 2049. At the evidentiary hearing on remand, the court must take into consideration this kind of evidence in deciding the selective prosecution claim.

## II. *Peremptory Challenges*

Despite repeated defense objections, the Government exercised its six peremptory challenges to remove every black venireperson from Gordon's jury. Those peremptory strikes followed a recurrent pattern of exclusions of black venirepersons in the Government's other voting fraud cases against black leaders. Gordon asserts a violation of the recent case of *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the seminal case of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, *reh'g denied*, 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965).

The district court denied Gordon's motion for dismissal of the indictment, for a mistrial, and for a hearing to determine the basis for the Government's use of peremptory challenges. The Government voluntarily stated its reasons for the strikes. Gordon requested a rebuttal hearing to challenge the Government's reasons. The court denied the motion and defense counsel then made a general proffer that they would be able to produce testimony "to the effect that even before the venire was brought into this courtroom on Monday morning, it was the intention of the United States Attorney to strike every black from this jury. . . ." The district court, without giving any reasons, entered a written order denying Gordon's motion.

Gordon then petitioned this Court for a writ of mandamus and prohibition pending the Supreme Court's decision in *Batson*, or alternatively, for an order compelling a hearing concerning the strikes. At that juncture, the petition was denied.

*Batson v. Kentucky* was not available to the district court, being decided approximately six months after Gordon was convicted. In *Batson*, the Supreme Court removed *Swain*'s burden requiring proof over a number of cases of the Government's discriminatory use of peremptory challenges. *Batson* allows a defendant to establish purposeful racial discrimination in the selection of the venire based solely on the facts of his own case. Gordon is entitled to make a *Batson* claim as a result of the Supreme Court's recent decision holding that *Batson* will be retroactively applied to cases pending on direct appeal. *Griffith v. Kentucky*, —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

Although the Government volunteered explanations for its peremptories, the district court failed to make any independent inquiry or allow Gordon the opportunity to offer rebuttal evidence pertaining to the Government's reasons. It is therefore necessary to remand this case to the district court to determine the facts concerning the *Batson* claim. It is important to emphasize, as we did in *United States v. David*, 803 F.2d 1567, 1571 (11th Cir.1986), that under *Batson*, the striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors.

Because it was the standard applicable at the time, Gordon argues for an evidentiary hearing on his claim that the Government

had systematically employed their peremptory challenges to disenfranchise blacks in other voting fraud cases. *Swain,* 380 U.S. at 223–4, 85 S.Ct. at 837–8. Gordon informed the district court that in two similar voting fraud prosecutions, the Government had used five of six peremptory challenges to strike black jurors in one case and four of six to strike black jurors in the other. This proffer was sufficient under the circumstances to entitle Gordon to a hearing on his *Swain* claim. Therefore on remand, Gordon should be permitted to offer evidence in support of his *Swain* claim. This hearing should be conducted in accordance with the guidelines set forth by this Court in *Willis v. Zant,* 720 F.2d 1212, 1220–21 (11th Cir.1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3546, 3548, 82 L.Ed.2d 849, 851 (1984).

### III. *Other Claims*

Gordon presents four other claims, none of which merit relief. Gordon argues that the district court erred when it instructed the jury that any violation of federal or state law would suffice to make out the intent required under the mail fraud statute, 18 U.S.C.A. § 1341, and the false information statute, 42 U.S.C.A. § 1973i(c).

■ In reviewing allegations of error in charging the jury this Court will examine the entire charge to determine whether, on the whole, the issues of law presented to the jury were adequate. *United States v. Blanton,* 793 F.2d 1553, 1560 (11th Cir. 1986). The jury instructions, read in their entirety, accurately defined the elements of the mail fraud and false information statutes, upon which Gordon was convicted.

Gordon contends it was improper for the court to describe to the jury the procedure under the Alabama statutes for absentee voting. Gordon was charged with violating federal law by fraudulently misusing the Alabama absentee voting law in an election of candidates for a federal office where there was a use of the United States mails. There is nothing unusual about a violation of a state statute being involved in a federal election prosecution. *United States v. Odom,* 736 F.2d 104, 116–17 (4th Cir.1984).

*See also,* Donsanto, *Federal Jurisdiction Over Local Vote Fraud,* 13 U.Balt.L.Rev. 1 (1983). The jury was entitled to know the state voting law, particularly in view of the extensive testimony about Alabama voting law. The court carefully separated the explanations of Alabama voting law from the federal charges.

This decision disposes of the Gordon claim that the jury instructions constituted a constructive amendment of the indictment.

Gordon claims there was insufficient evidence of his intent. The record, read most favorably to support the jury verdict, was sufficient to prove that Gordon participated in a scheme in which he fraudulently witnessed the signatures on the verification oaths of the ballots of Nebraska and Frankland Underwood without their consent and participation. These ballots were mailed and cast in the primary election of September 4, 1984. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■ Gordon claims the district court's modified *Allen* charge coerced the jury to render a guilty verdict. The instruction occurred after the jury had returned a partial verdict of not guilty on nine counts and after nine jurors had indicated upon polling by the court that the jury would be unable to reach unanimous verdicts on the remaining counts. After consultation with counsel, the district court decided to bring the jury back for further deliberations and stated:

I direct and instruct you each to report back to this courthouse in Tuscaloosa and to the jury room and be in the jury room at the hour of nine o'clock, at which time I will then bring you back into the courtroom.

Then, ascertaining that all members of the jury are here, I will then instruct you to return to the jury room for additional deliberations.

I want to make this further observation. I don't want you to think that I am not unmindful of the opinion that you have expressed to the Court in response to my inquiry. I thank you for your opinion.

But I am the ultimate decision-maker as far as this particular question is concerned. And I have formed an opinion that is perhaps different from many of you.

But in any event, it is my prerogative as Judge to make that decision, and my duty, if I think it is correct. And I do. And I have therefore made it.

And I hope each of you will have a good weekend, whatever is left of it. And Monday, I believe, is a holiday, at least for some.

The district court was entitled to encourage the jury to spend a reasonable amount of time deliberating, even after the jury indicated it was deadlocked after acquitting Gordon's co-defendant. Neither the above-mentioned instruction nor any other comment can be construed as coercive on the merits of the case. Indeed the jury found Gordon not guilty on five charges, and guilty of four. Moreover, the jury remained unable to reach a verdict on all the charges thereby further undermining the assertion that the jury was unduly influenced into reaching a verdict. *United States v. Alonso*, 740 F.2d 862, 878 (11th Cir.1984), *cert. denied*, 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985).

There is no merit to Gordon's claims that the district court erred in not sequestering the jury and in not declaring a mistrial.

VACATED AND REMANDED.