**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Jesus MENDOZA, Defendant–Appellant.**

No. 91CA0318.

Colorado Court of Appeals,
Div. IV.

March 11, 1993.

Rehearing Denied April 8, 1993.

Certiorari Granted and Judgment
Vacated Oct. 25, 1993.*

---

* Petition for Writ of Certiorari GRANTED and the judgment of the court of appeals is vacated. The case is remanded for reconsideration in light of *People v. Cerrone,* 854 P.2d 178 (Colo. 1993.).

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Matthew S. Holman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, James A. Henderson, Sp. Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PLANK.

Defendant, Jesus Mendoza, appeals a judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. We remand for further proceedings.

On the evening of July 17, 1990, the victim, age 14 and allegedly associated with the "Crips" street gang, became involved in an argument with defendant, age 16 and allegedly associated with the rival "Bloods" gang.

In the course of the argument, defendant pulled out a gun, loaded a clip into it, and began firing in several directions. The victim first withdrew behind a pick-up truck, but then moved into the open and taunted the defendant. Defendant fired another shot, fatally wounding the victim.

### I.

Defendant, who is Hispanic, contends that the trial court erred by not finding that the prosecution had used its peremptory challenges to discriminate against prospective minority jurors on the basis of race, violating both his and the improperly excused individuals' state and federal constitutional rights. We hold that the trial court's record is insufficient to determine whether the prosecution used its peremptory challenges to discriminate on the basis of race and, thus, remand for further proceedings.

The court employed the strike-method of jury selection. Thirty-five individuals from the venire pool were initially questioned, and eventually thirty-five individuals were passed for cause by the defendant and the prosecutor. Each side was then allowed up to eleven peremptory challenges. After the sixth round of peremptory challenges, the prosecutor had struck five of seven prospective Spanish-surnamed jurors, and the defendant objected that the prosecutor was using his peremptory challenges to discriminate against Hispanics.

Defendant sought both to make a record and for a determination by the court

whether the prosecutor was systematically excluding minorities. Rather than making such determination, the court asked the prosecutor to volunteer his reasons for the strikes. After the prosecutor stated his reasons, the court found that there was "no systematic exclusion," and jury selection continued.

Subsequently, with one of his remaining peremptory challenges, the prosecutor excused the one African–American on the panel. No contemporaneous objection was made by the defendant, and the jury was sworn. However, the next day, after the trial began and the first witness had testified, defendant again objected to the alleged systematic exclusion of minorities by the prosecutor based on the challenge to the unidentified African–American. The trial court found that the defendant was "not entitled to raise that."

### A.

■ We first address the defendant's contention that the trial court erred in determining there was no violation of either the defendant's, or the excused Spanish-surnamed panel members' Fourteenth Amendment equal protection rights. We conclude the record is insufficient to determine this question.

■ The prosecution violates a prospective juror's constitutional right to equal protection whenever he or she is improperly excused from jury service solely on the basis of race; when the defendant is the same race as the excused juror, then the defendant's constitutional right to equal protection is violated as well. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Fields v. People*, 732 P.2d 1145 (Colo.1987).

■ Under *Batson* and its progeny, a court must make two distinct findings to establish whether the prosecution used per-emptory challenges to eliminate prospective jurors on the basis of race. First, the court must find that the defendant has established a *prima facie* case of systematic exclusion. If so, then the burden shifts to the prosecution to show that it did not use its peremptory challenges to excuse any juror on the basis of race. It is important to distinguish between these findings: the first relates to the challenges of the potential jurors in total; the second relates to the challenge of each of the particular jurors excused.

■ When a trial court does not make all the findings necessary under *Batson* analysis, the appropriate remedy is to remand for further proceedings. *People v. Portley*, 857 P.2d 459 (Colo.App.1992).

■ To establish a *prima facie* case under *Batson*, the defendant must belong to a cognizable racial group and must show that the prosecution exercised its peremptory challenges to remove members of a cognizable racial group from the venire. Defendant then must present evidence sufficient to sustain an inference that the prosecution used peremptory challenges to discriminate improperly on the basis of race. In proving this inference, the defendant may rely not only on the facts and context of the particular case, but is also entitled to the benefit of the presumption that, "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87, *citing Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953).

■ *Batson* provides illustrations of possible scenarios which might give rise to such an inference, including a pattern of strikes against a particular group, or the questions and statements made by the prosecution during questioning. It is not necessary for the defendant to prove anything beyond an inference to establish a *prima facie* case.

■ Once it is possible reasonably to infer that systematic exclusion has occurred, the burden shifts to the prosecution to present a specific, race neutral explanation for each strike of members of the racial group. The explanation must be rationally related to the trial of the case and be race neutral; the rationale does not have to rise to the level of a challenge for cause. *Batson, supra; U.S. v. Wilson*, 884 F.2d 1121 (8th Cir.1989), *cert. denied*, 493 U.S. 827, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989); *U.S. v. Chinchilla*, 874 F.2d 695 (9th Cir.1989).

■ If, as here, the prosecution is willing to explain its use of peremptory challenges before the trial court determines whether an inference of systematic exclusion exists, the issue whether the defendant has established a *prima facie* case of systematic exclusion is moot. In that instance, the trial court has a duty to determine whether the prosecution has met its burden of showing that it used its peremptory challenges for constitutionally permissible considerations. *Garrett v. Morris*, 815 F.2d 509 (8th Cir.1987) *cert. denied*, 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987); *U.S. v. Lane*, 866 F.2d 103 (4th Cir.1989).

Thus, since we hold that a *prima facie* inference was established by waiver, we are left with the question of whether the trial court properly concluded that the prosecutor's explanations were neutral and specific.

■ The trial court here simply stated that it "found no pattern of systematic exclusion." This language suggests that the court may have found only that the majority of the explanations were neutral and specific. However, if even one explanation was insufficient, the court should have ruled that the exclusion violated both the defendant's and the prospective juror's equal protection rights. *United States v. Battle*, 836 F.2d 1084 (8th Cir.1987); *United States v. Gordon*, 817 F.2d 1538 (11th Cir.1987), *cert. denied*, 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988).

As well, the record shows that the trial court may have considered matters not relevant to the prosecution's burden of proof.

■ First, the prosecution asserted that two Spanish-surnamed individuals remained on the panel and that the prosecutor did not intend to strike them. However, once a *prima facie* case has been determined or waived, it is not relevant that some members of the excluded group remained on the jury. *U.S. v. Clemons*, 843 F.2d 741 (3rd Cir.1988).

Second, the trial court found that the exclusion of Spanish-surnamed individuals "cuts both ways" here because the victim was also Hispanic. Such a finding is not material to a determination whether either the defendant's, or the prospective juror's, equal protection rights have been violated. The harm being protected has nothing to do with the bias of the jury; rather, the *Batson* analysis seeks to prevent a prosecutor from assuming that a bias exists based solely on the race of a prospective juror and, in cases in which the defendant and the excused jurors share the same race, to protect the defendant's right to have members of his or her own race sit on the jury.

Finally, a review of the record also suggests that the trial court did not give the defendant the required opportunity to respond to the explanations given by the prosecutor to show that the explanations were either pretextual or too general in nature. *See United States v. Wilson, supra; United States v. Chinchilla, supra.*

Hence, we remand the cause for a hearing by the trial court to determine the sufficiency of the prosecutor's explanations for the three Spanish-surnamed individuals that were assertedly improperly excused.

We have considered and find no merit to defendant's contention that his right under the Colo. Const. art. II, § 16 to an impartial jury was violated.

B.

■ We next address defendant's contention that the trial court erred by holding

that he was not entitled to raise a *Batson* objection to the prosecutor's peremptory challenge of an African–American. We disagree because the objection was untimely.

▮ Clearly defendant has standing to object to the discriminatory use of peremptory challenges, if not on his own behalf, then on behalf of the challenged juror. *Powers v. Ohio, supra; Fields v. People, supra.*

The question of timeliness, however, is more complex. The prosecution's reliance on § 13–71–139, C.R.S. (1992 Cum.Supp.) and *People v. Green,* 759 P.2d 814 (Colo. App.1988) is misplaced: both relate to objections regarding the jury pool, and not to discriminatory uses of peremptory challenges.

A timely objection is essential to a *Batson* claim, since the procedures for proving such a claim include requiring the prosecutor to state neutral reasons for striking the potential juror. Thus, it is best accomplished contemporaneously with jury voir dire. *See Sawyer v. Butler,* 881 F.2d 1273 (5th Cir.1989), *aff'd* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990); *People v. Horrocks,* 190 Colo. 501, 549 P.2d 400 (1976) (objection after judgment untimely).

▮ Following the ruling in *United States v. Romero–Reyna,* 867 F.2d 834 (5th Cir.1989), *cert. denied,* 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990), we hold that a *Batson* objection must be made before the venire is dismissed and the trial begins. *See also United States v. Rodriguez,* 917 F.2d 1286 (11th Cir.1990) *cert. denied sub nom., Leon v. United States,* — U.S. ——, 112 S.Ct. 911, 116 L.Ed.2d 811 (1992); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).

Here, therefore, the defendant was precluded from making a *Batson* objection after the venire was dismissed, the jury panel had been sworn in, and the trial had begun.

II.

Next, the defendant contends that the trial court abused its discretion by permitting the prosecutor to introduce irrelevant and unfairly prejudicial evidence. We disagree.

The evidence in question includes the testimony of one police officer, photographs, a notebook containing "rap" music, lyrics, and a drawing of a gun. Defendant contends that this evidence improperly links him to the "Bloods" street gang and is highly prejudicial. Defendant also claims he was prejudiced by remarks made during the prosecutor's closing argument about the explosive relationship between the "Bloods" and the "Crips" street gangs.

A.

▮ We hold that all of the contested evidence is relevant.

CRE 401 defines relevant evidence as that which has a tendency to render a fact of consequence more or less probable than it would be without the evidence. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

Proof of intent to kill was a necessary part of the prosecution's case, and the evidence of the defendant's gang affiliation, which tended to prove the existence of such a motive for killing the victim, was relevant for purposes of CRE 401.

Relevant evidence for which the danger of unfair prejudice to the defendant outweighs its probative value should be excluded under CRE 403. However, we hold that the danger of prejudice which the evidence of the defendant's gang membership presented did not outweigh its probative value.

Defendant relies on California cases in which the prosecutor's repeated references to gang affiliations resulted in the creation of an unfairly prejudicial atmosphere. *People v. Cardenas,* 31 Cal.3d 897, 184 Cal.Rptr. 165 (1982); *People v. Perez,* 114

Cal.App.3d 470, 170 Cal.Rptr. 619 (1981). In those cases, however, the matters which the gang related evidence was introduced to support had already been independently proved. Thus, the linkage to gangs served no purpose but to suggest that the defendants, because they were gang members, had a propensity to commit criminal acts.

In the instant case, the fact of the defendant's gang affiliation could have shown a motive to commit the crime. The evidence was not offered to prove that the defendant was more likely to kill because he was a gang member; rather, it was offered to show that, because of his membership in a particular gang, defendant was more likely to murder this particular victim after deliberation. The evidence of gang affiliation, therefore, was necessary for the prosecution's case of first degree murder.

Hence, there was no abuse of discretion in the admission of this evidence.

### B.

Defendant also contends that the prosecutor's statements during closing arguments that the "Bloods and Crips do not get along peaceably" were highly prejudicial and not supported by the evidence, thus warranting a mistrial. We disagree.

A mistrial should not be ordered except when prejudice is so substantial that its effect on the jury cannot be remedied by other means. *People v. Goff*, 187 Colo. 103, 530 P.2d 514 (1974).

Here, since the nature of the relationship between the two gangs was germane to the prosecution's theory of the case, and sufficient evidence illustrating this relationship had been introduced at trial to support the prosecutor's comments, we conclude that the prejudice to the defendant, if any, was not so substantial as to warrant a mistrial.

The cause is remanded for further proceedings on the *Batson* issue. If the trial court determines that the prosecutor's jury selection procedures violated defendant's right to equal protection of the law, then the judgment of conviction is reversed and defendant should be retried. If the prosecutor's jury selection procedures did not violate defendant's right to equal protection of the law, then the judgment of conviction is affirmed, subject only to defendant's right to appeal that ruling.

METZGER and RULAND, JJ., concur.