**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Jesus MENDOZA, Defendant–Appellant.**

**No. 91CA0318.**

Colorado Court of Appeals, Div. IV.

March 24, 1994.

Rehearing Denied May 12, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Matthew S. Holman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, James A. Henderson, Sp. Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PLANK.

Defendant, Jesus Mendoza, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. In an earlier decision, we remanded for further proceedings on the issue of whether the prosecutor's jury selection procedures violated defendant's right to equal protection of the law. *People v. Mendoza,* 860 P.2d 1370 (1993). However, on certiorari review, our supreme court vacated that judgment and has remanded the case to this court for reconsideration in light of *People v. Cerrone,* 854 P.2d 178 (Colo.1993). Upon that consideration, we reaffirm our previous decision and remand for further proceedings applying the three-step process adopted by *Cerrone.*

I.

Defendant, who is of Hispanic heritage, contends that the trial court erred by not finding that the prosecution had used its peremptory challenges to discriminate against prospective minority jurors on the basis of race, violating his and the improperly excused individuals' state and federal constitutional rights. We conclude that the record is insufficient to determine this question.

The court employed the strike-method of jury selection. Thirty-five individuals were passed for cause by the defendant and prosecutor. Each side was then allowed up to eleven peremptory challenges. After the sixth round of peremptory challenges, the prosecutor had struck five prospective Spanish-surnamed jurors, and the defendant objected that the prosecutor was using his peremptory challenges to discriminate against Hispanics.

Defendant sought to make a record and then have the court determine whether the prosecutor was systematically excluding jurors on the basis of race. Rather than making such determination, the court asked the prosecutor to volunteer his reasons for the strikes. After the prosecutor stated his reasons, the court found that there was no "systematic exclusion," and jury selection continued.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the equal protection clause of the Fourteenth Amendment prohibited a prosecutor's exercise of peremptory challenges to strike petit jurors on account of race. Our supreme court in *People v. Cerrone, supra,* recognized the three-step process outlined in *Batson* for evaluating claims of racial discrimination in jury selection under the equal protection clause.

Under that test, the defendant must first make a prima facie showing that the prosecution has excluded potential jurors on account of race. Second, if a requisite showing has been made, the burden shifts to the prosecution to articulate a race-neutral explanation for removing the jurors in question. Third, if the prosecution succeeds in articulating a race-neutral explanation for each juror, then the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *People v. Cerrone, supra.*

When the trial court does not make all the findings necessary under the *Batson* analysis, the appropriate remedy is to remand for further proceedings. *People v. Portley,* 857 P.2d 459 (Colo.App.1992).

A.

In following the three-step process, we first must determine whether the defendant established a prima facie showing that the prosecution excluded potential jurors on account of race.

To establish a prima facie case under *Batson,* the defendant must belong to a cognizable racial group and must first show that the prosecution exercised its peremptory challenges to remove members of a cognizable racial group from the jury and that the selection process provided the opportunity for discrimination. *People v. Cerrone, supra.* Defendant need not be a member of the same racial group as that allegedly removed from the jury. *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

The defendant must then demonstrate that these facts or any other relevant circumstances give rise to an inference that the prosecution used the challenge to exclude jurors on the basis of race.

The record supports a finding that the trial court here implicitly ruled that a prima facie case had been established by the prosecution's use of the first five out of six peremptory challenges to remove Hispanic jurors from the jury.

B.

Once a defendant establishes a prima facie showing of racially based peremptory challenges, the burden shifts to the prosecution to articulate a race-neutral explanation for its actions. The explanation must be based on something other than race, and unless a discriminatory intent is inherent in the reason given, the reason will be accepted as race neutral. *People v. Cerrone, supra.*

This burden is not met by general assertions that the prosecution did not discriminate, but the basis stated for the challenge need not rise to the level justifying an exercise of a challenge for cause. *People v. Cerrone, supra.* The prosecution must articulate a neutral explanation related to the particular case being tried. *Batson v. Kentucky, supra.*

The record establishes that, here, the prosecution presented explanations not based on race for each of the five peremptory challenges. One of the jurors grew up with the defendant's lawyer, another knew the defendant's mother, another indicated that she did not want to serve on the jury because of the defendant's age, and another was removed because she stated that sympathy toward the defendant might be a factor for her in trying to decide the case. The prosecution gave as an explanation for removing the fifth juror that he did not seem "to understand the questions or be literate based on his reading of the sign in front of us."

C.

The third step of the *Batson* process requires the court to determine as an "historical fact" whether the defendant has established "purposeful discrimination." *People v. Cerrone, supra.* To determine whether the prosecution intended to discriminate or whether the prosecution's race-neutral explanations should be believed, the trial court should look to all relevant evidence. *People v. Cerrone, supra.*

There are no prescribed procedures for presenting evidence and information relevant to the *Batson* three-step process. The defendant, however, "must have the opportunity to challenge the credibility of whatever evidence the People present." *People v. Cerrone, supra,* 854 P.2d at 191 (fn. 22).

In reviewing the record we find that the defendant's attorney conceded that one explanation given was valid, but did not have the opportunity to respond to the remaining explanations provided by the prosecution. The trial court simply stated that it was "satisfied with the explanation[s]" and ruled that it was "not going to find there's any systematic exclusion."

*Cerrone* requires that the defendant have the opportunity to respond to the prosecutor's comments on each juror and then the court must determine whether the exclusion of any juror violated either the defendant's or the prospective juror's equal protection rights. *See U.S. v. Gordon,* 817 F.2d 1538, 1541 (11th Cir.1987), *cert. dismissed,* 487

U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988).

Because the trial court did not have the benefit of the analysis in *Cerrone* at the time it ruled, the cause must be remanded so that the trial court may complete the third step of the *Batson* three-step process, *i.e.*, allowing the defendant to present evidence rebutting the sufficiency of the prosecutor's explanations for the three Spanish-surnamed individuals who were assertedly improperly excused.

D.

We next address defendant's contention that the trial court erred by holding that he was not entitled to raise a *Batson* objection to the prosecutor's peremptory challenge of an African-American. We disagree because the objection was untimely.

Clearly defendant has standing to object to the discriminatory use of peremptory challenges, if not on his own behalf, then on behalf of the challenged juror. *Ohio v. Powers, supra; Fields v. People,* 732 P.2d 1145 (Colo.1987).

The question of timeliness, however, is more complex. The prosecution's reliance on § 13-71-139, C.R.S. (1993 Cum.Supp.) and *People v. Green,* 759 P.2d 814 (Colo.App. 1988) is misplaced: both relate to objections regarding the jury pool, and not to discriminatory uses of peremptory challenges.

A timely objection is essential to a *Batson* claim, since the procedures for proving such a claim include requiring the prosecutor to state neutral reasons for striking the potential juror. Thus, it is best accomplished contemporaneously with jury voir dire. *See Sawyer v. Butler,* 881 F.2d 1273 (5th Cir. 1989), *aff'd sub nom. Sawyer v. Smith,* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990); *People v. Horrocks,* 190 Colo. 501, 549 P.2d 400 (1976) (objection after judgment untimely).

Following the ruling in *United States v. Romero-Reyna,* 867 F.2d 834 (5th Cir.1989), *cert. denied,* 494 U.S. 1084, 110 S.Ct. 1818, 108 L.Ed.2d 948 (1990), we hold that a *Batson* objection must be made before the venire is dismissed and the trial begins. *See also United States v. Rodriquez,* 917 F.2d 1286 (11th Cir.1990) *cert. denied sub nom. Leon v. United States,* — U.S. —, 112 S.Ct. 911, 116 L.Ed.2d 811 (1992); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978).

Here, therefore, the defendant was precluded from making a *Batson* objection after the venire was dismissed, the jury panel had been sworn in, and the trial had begun.

II.

Next, the defendant contends that the trial court abused its discretion by permitting the prosecutor to introduce irrelevant and unfairly prejudicial evidence. We disagree.

The evidence in question includes the testimony of one police officer, photographs, a notebook containing "rap" music lyrics, and a drawing of a gun. Defendant contends that this evidence improperly links him to the "Bloods" street gang and is highly prejudicial. Defendant also claims he was prejudiced by remarks made during the prosecutor's closing argument about the explosive relationship between the "Bloods" and the "Crips" street gangs.

A.

We hold that all of the contested evidence is relevant.

CRE 401 defines relevant evidence as that which has a tendency to render a fact of consequence more or less probable than it would be without the evidence. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

Proof of intent to kill was a necessary part of the prosecution's case, and the evidence of the defendant's gang affiliation, which tended to prove the existence of a motive for killing the victim, was relevant for purposes of CRE 401.

Relevant evidence for which the danger of unfair prejudice to the defendant outweighs its probative value should be excluded under CRE 403. However, we hold that the danger of prejudice which the evidence of the

defendant's gang membership presented did not outweigh its probative value.

Defendant relies on California cases in which the prosecutor's repeated references to gang affiliations resulted in the creation of an unfairly prejudicial atmosphere. *People v. Cardenas,* 31 Cal.3d 897, 184 Cal.Rptr. 165, 647 P.2d 569 (1982); *People v. Perez,* 114 Cal.App.3d 470, 170 Cal.Rptr. 619 (1981). In those cases, however, the matters which the gang related evidence was introduced to support had already been independently proved. Thus, the linkage to gangs served no purpose but to suggest that the defendants, because they were gang members, had a propensity to commit criminal acts.

In the instant case, the fact of the defendant's gang affiliation could have shown a motive to commit the crime. The evidence was not offered to prove that the defendant was more likely to kill because he was a gang member; rather, it was offered to show that, because of his membership in a particular gang, defendant was more likely to murder this particular victim after deliberation. The evidence of gang affiliation, therefore, was necessary for the prosecution's case of first degree murder.

Hence, there was no abuse of discretion in the admission of this evidence.

B.

Defendant also contends that the prosecutor's statements during closing arguments that the "Bloods and Crips do not get along peaceably" were highly prejudicial and not supported by the evidence, thus warranting a mistrial. We disagree.

A mistrial should not be ordered except when prejudice is so substantial that its effect on the jury cannot be remedied by other means. *People v. Goff,* 187 Colo. 103, 530 P.2d 514 (1974).

Here, since the nature of the relationship between the two gangs was germane to the prosecution's theory of the case, and sufficient evidence illustrating this relationship had been introduced at trial to support the prosecutor's comments, we conclude that the prejudice to the defendant, if any, was not so substantial as to warrant a mistrial.

The cause is remanded for further proceedings on the *Batson* issue. If the trial court determines that the prosecutor's jury selection procedures violated defendant's right to equal protection of the law, then the judgment of conviction is reversed and defendant should be retried. If the prosecutor's jury selection procedures did not violate defendant's right to equal protection of the law, then the judgment of conviction is affirmed, subject only to defendant's right to appeal that ruling.

METZGER and RULAND, JJ., concur.