The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Kenneth E. MARION, Defendant–
Appellant.

No. 94CA1151.

Colorado Court of Appeals,
Div. III.

Nov. 29, 1996.

Rehearing Denied Jan. 9, 1997.

Certiorari Denied Aug. 4, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Kenneth Marion, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of possession of a controlled substance. We affirm.

While defendant was driving his car, two police officers saw him throw an object out the window. They stopped him and, following the stop, they found a handbag containing cocaine in the car and also found marijuana in the trunk.

Defendant was not charged with possession of the marijuana. However, he was convicted of possession of the cocaine.

### I.

Defendant first contends the trial court allowed the prosecutor to use a peremptory challenge to excuse a prospective juror based on racial motives. We are not persuaded.

Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), courts apply a three-part test to determine whether a peremptory challenge constitutes purposeful discrimination against a cognizable group in violation of the Equal Protection Clause.

In step one, the defendant is required to make a *prima facie* showing that the prosecution has excluded a prospective juror based on race. The facts and circumstances surrounding the peremptory challenge may give rise to an inference of purposeful racial discrimination. *People v. Portley*, 857 P.2d 459 (Colo.App.1992). A "discriminatory purpose" used in this context means that the prosecutor selected a particular course of action partly because of its adverse effects on an identifiable group. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *People v. Baker*, 924 P.2d 1186 (Colo.App.1996) (peremptory challenge not race-based merely because counsel asked race-related questions during voir dire).

Once defendant makes a *prima facie* showing that purposeful discrimination on account of race occurred during the jury selection process, the burden then shifts to the prosecutor to articulate a race-neutral explanation for the peremptory challenge (step two). *People v. Cerrone*, 854 P.2d 178 (Colo. 1993).

At this stage, the court must assume the prosecutor's proffered reasons for the peremptory challenge are true. *Hernandez v. New York, supra.* Importantly, the prosecutor's explanation in this second stage need not be persuasive, or even plausible. The Supreme Court recently stated in *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771,

131 L.Ed.2d 834, 839 (1995) that: "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race[-]neutral." *See People v. Davis*, 935 P.2d 79 (Colo.App. 1996).

Step three occurs after the prosecution has articulated a race-neutral justification for the peremptory strike. The defendant must be given some opportunity to respond to the prosecutor's explanation and to prove purposeful racial discrimination, and the trial court thereafter must decide whether the opponent of the challenge has proved purposeful racial discrimination. *People v. Cerrone, supra; People v. Mendoza*, 876 P.2d 98 (Colo.App.1994).

At this third stage, the persuasiveness of the prosecutor's justification is relevant. *People v. Davis, supra.* "Implausible or fantastic justifications [by the prosecutor] may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett v. Elem, supra*, 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839; *see also People v. Baker, supra.*

Whether the prosecutor's explanation was race-neutral is reviewed *de novo.* *United States v. Kunzman*, 54 F.3d 1522 (10th Cir.1995).

### A.

Here, the prosecutor stated the following reasons for challenging an African–American prospective juror:

[The challenged venire member] was not as forthcoming or didn't volunteer as much information, when I asked him questions, as did the other jurors. And that goes to his rapport with me, personally, and my abilities to persuade him and have him listen to the evidence in the light most favorable—favorable to my position. He did not make as much eye contact with me....

Secondly ... [the challenged venire member] was asked to speak up a couple of times as it related to me.... I think that this Court can take notice that *he was one of the least enthused jurors. He had to be asked to speak up* .... [W]hen he gave

answers, they were very cryptic and short, and that caused me concern as well. I don't want people being on my jury that aren't enthused about it, frankly.

[T]hirdly, when I asked about the cases being proved beyond a reasonable doubt and what that was, and a hundred percent, and some of the other jurors ... said that—that the fact that the guy's shoes were a different color would mean not guilty, well not only did [the challenged venire member] say that ... he didn't think it could be proven to a hundred percent, but he nodded his head along with [another prospective juror], saying, Yeah, that could cause me concern, that would be a reasonable doubt.

In an example that I tried to paint very much in favor of guilty [sic], the other jurors, several of them, shook their heads, as if meaning no, that wouldn't be a reasonable doubt. [The challenged venire member] agreed with [another prospective juror] on that issue, and they both caused me concern to that extent. . . .

The way he answered questions, *his demeanor as a juror concerned me.* (emphasis added)

Defendant contends that the prosecutor's justification for challenging the prospective juror was a pretext for racial discrimination because it was based on a subjective assessment of demeanor. According to defendant, because the record contains no objective evidence verifying the prosecutor's justification, the trial court abused its discretion in finding the peremptory challenge was race-neutral. We disagree.

■■■ A trial court's finding on discriminatory intent involves a determination whether the prosecutor's explanation for the peremptory challenge is race-neutral or merely is a pretext for racial discrimination. *See Hernandez v. New York, supra.* This task can be difficult when the prosecutor's justification for the challenge is based on a subjective assessment of the prospective juror's demeanor. *See generally* M. Raphael & E. Ungvarsky, *Excuses, Excuses: Neutral Explanations Under Batson v. Kentucky,* 27 U. Mich. J.L. Ref. 229 (1993); Note, *Batson's Invidious Legacy: Discriminatory Juror*

*Exclusion and the "Intuitive" Peremptory Challenge,* 78 Cornell L.Rev. 336 (1993).

■■■ *Batson* places special confidence in the trial court's ability to distinguish the legitimate racially neutral explanation from the sham reason. *Daniels v. State,* 768 S.W.2d 314 (Tex.App.1988). Thus, deference is given to the trial court's factual finding whether the prosecutor intended to discriminate on the basis of race. *People v. Cerrone, supra; People v. Davis, supra.*

In *Hernandez v. New York, supra,* the United States Supreme Court addressed an analogous situation in which a prosecutor's justification for a peremptory challenge included concerns about the demeanor of several prospective jurors. The prosecutor had challenged prospective jurors who were bilingual and whose verbal and non-verbal responses during *voir dire* indicated that they might have difficulty putting aside their knowledge of Spanish and relying on a translator's version of testimony spoken in Spanish.

While cautioning that the *blanket exclusion* of bilingual venire members may violate equal protection, a plurality of the Court nevertheless upheld as race-neutral the prosecutor's justification of peremptory challenges partly based on "the hesitancy in [the prospective jurors'] answers and their lack of eye contact." *Hernandez v. New York, supra* (fn.1) (plurality opinion, Kennedy, J.). The Court deferred to the trial court's finding of non-discrimination based largely on its ability to assess the demeanor and credibility of the prosecutor.

Thus, *Hernandez* permits peremptory challenges to be justified partly on the basis of the prosecutor's assessment of prospective jurors' demeanor. However, courts throughout the country have differed in the degree of deference accorded to trial court findings of non-discrimination where the record lacks any objective evidence supporting the prosecutor's proffered explanation.

For example, where a prosecutor used five of his ten peremptory challenges to strike five of the six African–Americans from the panel, a Texas court was reluctant to accept

the trial court's finding of non-discrimination based on a prosecutor's subjective assessment of a juror's demeanor. The prosecutor cited inattentiveness and failure to make eye contact, among other reasons. *Daniels v. State, supra.*

Similarly, in *State v. Cruz,* 175 Ariz. 395, 857 P.2d 1249 (1993), the court held that a prosecutor's facially neutral but wholly subjective reason for exercising peremptory challenges must be coupled with some objective verification to overcome a *prima facie* showing of discrimination. It stated:

> Such verification could come from the words of the prospective juror .... [or] could also be accomplished by a prosecutor's statement concerning the facts upon which the subjective conclusion is based. This would assist the trial court in determining whether the proffered reason was truly neutral or merely pretextual ... *[T]he objective verification could be the trial court's own observations, made on the record,* which might show that the prosecutor's subjective conclusion was an appropriate reason for a facially neutral peremptory challenge.

*State v. Cruz, supra,* at 399, 857 P.2d at 1253 (emphasis added); *see Hill v. State,* 547 So.2d 175 (Fla.App.1989); *Chew v. State,* 317 Md. 233, 562 A.2d 1270 (1989).

Here, the trial court accepted the prosecutor's explanation as race-neutral, stating:

> I think the district attorney fairly characterized [the prospective juror's] responsiveness as being less than forthcoming. The Court noted he was extremely reticent, seemed to be quite uncomfortable being here. He mumbled. I had a great deal of difficulty in understanding his answers. He at times appeared to the court to be inattentive and generally gave off sort of an aura of having no interest in being part of this process.
>
> And those are, I think, very legitimate reasons for exercising a peremptory challenge, wholly separate and apart from ... his race ... so the *Batson* challenge will be denied.

On this record, we conclude that the requirements of *Purkett v. Elem, supra,* and

*People v. Cerrone, supra,* were met because discriminatory intent was not inherent in the prosecutor's explanation in stage two and because the trial court did not find the explanation pretextual.

Further, here, not only did the challenged venire member offer only brief responses to the prosecutor's questions, but the trial court noted the potential juror's inattentiveness and lack of interest in the proceedings in comparison to that of the other potential jurors. Thus, even if we were to apply the more stringent criteria used in *State v. Cruz, supra,* and analogous cases preceding *Purkett,* the trial court's observations and findings provided objective verification of the prosecutor's statement sufficient to overcome the *prima facie* showing of discrimination.

Accordingly, we conclude the trial court did not err in determining the prosecutor's explanation for the peremptory challenge was race-neutral and not based on purposeful discrimination. *See Hernandez v. New York, supra; see also State v. Cruz, supra.*

### B.

We also reject defendant's related contention that the trial court failed to grant him an adequate opportunity to rebut the prosecutor's justification for the peremptory challenge.

In *People v. Cerrone, supra* (fn.22), our supreme court stated that, when the prosecutor is permitted to present evidence in support of a race-neutral explanation, "the defendant must be given an opportunity to challenge the credibility of whatever evidence the [prosecutor] present[s]."

In *People v. Mendoza, supra,* a division of this court extended this requirement to all *Batson* challenges in which the prosecutor attempts to tender a race-neutral justification. The *Mendoza* court held that the defendant must have some opportunity to respond to the prosecutor's comments on each juror before the trial court rules on the *Batson* objection. *People v. Mendoza, supra; see also United States v. Gordon,* 817 F.2d 1538 (11th Cir.1987), *cert. dismissed,* 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988). *See generally* Comment, *Divining*

*Prosecutorial Motives in the Use of Peremptory Challenges: Must the Defendant in a Batson Inquiry be Allowed to Present Rebuttal Evidence?*, 35 Loy. L.Rev. 189, 214 (1989) ("[I]t is patently unjust to place on a criminal defendant the 'ultimate burden of persuasion' and then block that defendant in his effort to meet his burden.").

We conclude the requirements of *Cerrone* and *Mendoza* were met. Following the prosecutor's explanation of why the particular juror had been challenged, the trial court entered into a colloquy with defense counsel about *Batson*-type objections. Thereafter, it found that the prosecutor had presented a race-neutral justification. At no point during or after this colloquy did the court prevent defense counsel from offering further argument on the validity of the prosecutor's explanation.

Thus, defense counsel had a fair opportunity to present rebuttal argument. *Cf. United States. v. Arce*, 997 F.2d 1123 (5th Cir.1993); *United States v. Rudas*, 905 F.2d 38 (2d Cir.1990).

### II.

■ Defendant next contends the trial court abused its discretion in allowing the prosecutor to cross-examine him regarding marijuana found in the trunk of his car. We perceive no error.

Defendant first asserts that the inquiry regarding the marijuana was beyond the scope of defendant's testimony on direct examination and, hence, was inadmissible under CRE 611(b). We are not persuaded.

CRE 611(b) provides that:

Cross-examination should be limited to the subject matter of the direct examination and matters affecting he credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

■ CRE 611(b) should be liberally construed to permit cross-examination on any matter germane to the direct examination. *People v. Sallis*, 857 P.2d 572 (Colo.App. 1993). A trial court has broad discretion to set the scope and limits of cross-examination, and absent an abuse of discretion, its deter-

mination will not be disturbed on appeal. *People v. Raffaelli*, 647 P.2d 230 (Colo.1982).

During the arrest, police found a small handbag containing cocaine in defendant's car. Defendant chose to testify at trial, and during his direct examination, he denied any knowledge that the handbag contained cocaine and denied possession of the cocaine. The prosecutor's questions on cross-examination related to the circumstances surrounding defendant's arrest and to other drugs found in his car.

Given defendant's own testimony denying knowledge and ownership of any drugs, such evidence also was helpful to the jury in understanding the events surrounding his arrest for possession of cocaine, and in evaluating his credibility. Thus, the trial court's ruling in allowing questions regarding the marijuana during defendant's cross-examination did not constitute an abuse of discretion requiring reversal. *See People v. Sallis, supra.*

■ Nor are we persuaded by defendant's second assertion that cross-examination about the marijuana in the trunk constituted CRE 404(b) evidence and was inadmissible without a cautionary instruction to the jury.

■ When admitting evidence of defendant's past crimes or other bad acts under CRE 404(b), the trial court must instruct the jury regarding the limited purposes for which the evidence is being introduced. *People v. Miller*, 890 P.2d 84 (Colo.1995); *see also People v. Garner*, 806 P.2d 366 (Colo. 1991).

However, here, the defense did not request a limiting instruction during the defendant's cross-examination. Defendant first requested such an instruction during the prosecution's rebuttal. The court complied and instructed the jury that:

[T]his evidence of other acts [was] only being introduced insofar as it may bear upon the credibility of the witness in the case, and [the jury] should consider it for that purpose and no other purpose.....

The court gave a similar limiting instruction in the final jury instructions.

We also note that, unlike the situation in *People v. Miller, supra,* the prosecutor obtained a ruling from the court about the admissibility of the marijuana before cross-examining defendant with that evidence. Thus, the defendant here was not unfairly surprised.

Accordingly, even if we assume the evidence was not *res gestae, see People v. Quintana,* 882 P.2d 1366 (Colo.1994), we are not persuaded by defendant's contention that reversal is required on this basis.

## III.

Finally, defendant asserts that he was denied a fair trial because of prosecutorial misconduct. We disagree.

The determination whether a prosecutor's statements constitute inappropriate prosecutorial argument is within the trial court's discretion. *Harris v. People,* 888 P.2d 259 (Colo.1995). Likewise, the trial court's decision whether to grant a mistrial will be upheld absent an abuse of discretion. *People v. Baca,* 852 P.2d 1302 (Colo.App. 1992). Only when the prejudice created by a prosecutor's conduct is so great as to result in a miscarriage of justice will a new trial be granted notwithstanding the trial court's refusal to impose such a sanction. *Harris v. People, supra.*

Defendant contends that the prosecutor: (1) made improper comments during opening statements; (2) elicited inadmissible testimony during trial; and (3) made inappropriate statements during closing arguments. We perceive no reversible error.

After each of the erroneous statements in opening argument was made, the trial court instructed the jury to disregard the prosecutor's comments. We presume the jury followed the court's curative instructions. *See People v. Moody,* 676 P.2d 691 (Colo.1984).

During the presentation of evidence, defendant also objected to the prosecutor's questioning of a police officer regarding the possibility that defendant was driving under the influence. These objections were sustained and the witness did not answer the questions. Further, the jury had already been informed through admissible testimony that defendant was suspected of driving under the influence. Thus, no prejudice occurred as a result of these unanswered questions.

Finally, during closing argument, the trial court sustained defendant's objection to the prosecutor's attempt to characterize certain facts as undisputed. After the objection, the prosecutor clarified his statement and defendant did not object. Again, there was no prejudice to the defendant.

Also during closing arguments, the prosecutor stated that portions of defendant's testimony were "all a crock" and that "None of that happened.... That's all it was, a story, make-believe."

While such comments should be avoided, *see Harris v. People, supra,* defendant did not object, and in light of all the evidence presented, we conclude they did not affect the verdict or deny defendant a fair trial. Accordingly, reversal is not required under the plain error standard. *See Wilson v. People,* 743 P.2d 415 (Colo.1987); Crim. P. 52(a).

Judgment affirmed.

JONES and BRIGGS, JJ., concur.