**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Peggy Sue SAIZ, Defendant–Appellant.**

**No. 94CA0069.**

Colorado Court of Appeals, Div. II.

Nov. 24, 1995.

As Modified on Denial of Rehearing Feb. 1, 1996.

Certiorari Denied Sept. 3, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Catherine P. Adkisson, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Gerash, Robinson & Miranda, P.C., Walter L. Gerash, Todd J. Thompson, Denver, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Peggy Sue Saiz, appeals from the judgment of conviction entered upon a jury verdict finding her guilty of first degree murder in the death of her husband. We affirm.

On November 9th, 1990, defendant shot the victim four times in the back of the head while he slept. Afterwards, in order to simulate a burglary, she collected valuable items from their home and took some to her mother's house and others to her boyfriend's house.

Later that evening, she and her sister went to a bar where she met a man with whom she danced, and after the bar closed, the three of them went out for a late night snack. It was not until defendant and her sister returned to defendant's home that her sister called 911 and reported the homicide. Defendant had previously told her sister about her involvement in the killing.

Defendant initially told the police that when she and her sister returned home from dancing, they found the victim dead and the

house burglarized. During police questioning a few weeks later, however, she admitted that she had killed the victim, but claimed that she had done so in self-defense.

According to defendant's account to the police, the victim had physically abused her on numerous occasions and, on the day of the homicide, had threatened to kill her and forced her to have sex. She claimed that she shot him in fear that he would kill her when he awoke.

Charged with first degree murder, defendant entered a plea of not guilty by reason of insanity and asserted a defense of impaired mental condition. Thereafter, a jury found defendant to be sane, and, on the first day of the trial on the substantive offense, she withdrew her impaired mental condition defense.

At trial, defendant argued that she had acted in self-defense as a battered woman when she shot the victim. The jury was instructed on self-defense and on second degree murder and heat of passion manslaughter. The jury returned a guilty verdict on first degree murder, and the court sentenced defendant to life imprisonment without the possibility of parole.

## I.

Defendant first contends that the trial court erred in excluding the testimony of three defense witnesses. We disagree.

■ The admission of evidence is within the discretion of the trial court, and its decision will not be reversed absent an abuse of discretion. *People v. Schwartz*, 678 P.2d 1000 (Colo.1984). To demonstrate an abuse of discretion, a defendant must show that the trial court's ruling was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33 (Colo.1993).

## A.

We reject defendant's assertion that the trial court abused its discretion in excluding the testimony of her daughter's teacher.

Defendant made an offer of proof that the teacher would have testified that, on the day of the homicide, defendant's daughter refused to go home from school and he was so concerned about her behavior that he reported it to the school principal in fulfillment of his obligation to report possible child abuse.

Defendant argues that this testimony was relevant to show that the victim was planning a violent attack on defendant that day. This inference, defendant claims, is supported by other evidence in the record. Additionally, defendant asserts that the teacher's testimony was relevant to show that the victim had become increasingly abusive towards defendant's daughter.

The trial court excluded this evidence as irrelevant, as being for the most part hearsay, and as being speculative concerning the daughter's fearing violence from the victim.

■ Because defendant's daughter did not tell her teacher why she did not want to go home, the teacher's testimony concerning the daughter's statements, even if arguably admissible under the state of mind exception to the hearsay rule, CRE 803(3), was not relevant under CRE 401. Moreover, defendant was relying on a theory of self-defense, not defense of others, so any possible inference as to the victim's treatment of defendant's daughter was not relevant.

Accordingly, the trial court did not abuse its discretion in excluding the teacher's testimony.

## B.

We also reject defendant's contention that the trial court erred in excluding the testimony of a co-worker of defendant and the victim.

■ The co-worker would have testified that, in 1986 or 1987, he and the victim were passengers on a bus driven by defendant, that the victim had become jealous because men on the bus, including the co-worker, were sitting near the defendant, and that the victim had insulted these men and challenged the co-worker to a fight. The witness would also have testified that defendant became very upset as a result of this incident and asked him not to speak to her again in the victim's presence.

Defendant argues that this testimony is relevant because it reveals that the victim made threats in defendant's presence and also because the victim's behavior in this situation was consistent with that of a batterer.

After allowing the defense to examine the co-worker *in camera,* the court ruled that the testimony was irrelevant. The court found that the proffered testimony was essentially bad character evidence and concluded that it should be excluded under CRE 403 because its probative value was substantially outweighed by the danger of unfair prejudice.

Here, because the victim did not engage in violence during the incident in question, the probative value of the testimony was slight. There was, however, a danger of unfair prejudice because the victim had become upset and used foul language during this incident. Furthermore, because other witnesses had testified that the victim was jealous and had a bad temper, this evidence was cumulative.

█ Trial courts are allowed broad discretion in determining whether the probative value of evidence is substantially outweighed by its prejudicial effect. See *People v. Rubanowitz,* 688 P.2d 231 (Colo.1984). We find no abuse of discretion here.

### C.

█ We also reject defendant's contention that the trial court erred in excluding the testimony of the lawyer who had represented the victim's former wife in divorce proceedings.

The lawyer had helped the former wife obtain a temporary restraining order against the victim, and defendant sought to call him to testify that he obtained the restraining order based on verified allegations that the victim had physically abused his former wife and that she was in fear of him.

The trial court ruled that the lawyer's testimony was inadmissible as hearsay and that the allegations in support of the restraining order were not only hearsay, but also vague and conclusionary. The trial court did, however, instruct the jury that the victim's former wife had obtained a restraining order during divorce proceedings against the victim.

We conclude that the trial court's ruling was well within its discretion.

### II.

Defendant asserts that the trial court erred in allowing the forensic psychiatrist who examined defendant during the sanity phase of trial to testify at the trial on the merits. Defendant also contends that the trial court improperly limited cross-examination of the psychiatrist. We disagree in part and agree in part, but find no reversible error.

### A.

We disagree with defendant's contention that the trial court improperly allowed the psychiatrist to testify.

After defendant entered a plea of not guilty by reason of insanity, the trial court ordered a psychiatric examination pursuant to § 16–8–106, C.R.S. (1986 Repl.Vol. 8A). At the trial on the merits, after defendant had withdrawn her impaired mental condition defense, the psychiatrist who had previously examined the defendant was allowed to testify in rebuttal to expert witnesses called by defendant to establish that she suffered from battered woman's syndrome and post-traumatic stress disorder.

Section 16–8–107(1), C.R.S. (1986 Repl.Vol. 8A) provides, in pertinent part:

> [N]o evidence acquired directly or indirectly for the first time from a communication derived from defendant's mental processes during the course of a court-ordered examination under section 16–8–106 is admissible against the defendant on the issues raised by a plea of not guilty, if the defendant is put to trial on those issues....

Indicating its awareness of the limitations imposed by § 16–8–107(1), the trial court nevertheless concluded that the psychiatrist could testify as a rebuttal witness so long as she based her opinions on materials and information she had obtained and reviewed outside of her interviews with the defendant.

The court specifically ruled that she could not refer to or rely upon the interviews she had with defendant.

■ Relying on the police reports, witness statements, video tapes of defendant's statements to police, and the reports of other experts, the psychiatrist proceeded to give her opinion as to whether the defendant "disassociated" at the time of the shooting, whether she suffered from post-traumatic stress disorder or battered woman's syndrome, and whether she was in fear for her life at the time of the shooting.

Defendant argues that the psychiatrist could not possibly have formed her opinions without relying on, at least to some extent, information she acquired during her court-ordered examination of the defendant. Alternatively, defendant argues that, even if the psychiatrist had been able to put this information aside, her testimony would still have been improper because she would have been left with insufficient data upon which to base her opinions.

Section 16–8–107(1) prohibits the prosecution from using, at trial on the substantive offense, evidence first derived from communications made by a defendant during a sanity examination. However, nothing in the statute prohibits the prosecution from calling the examining psychiatrist to give an opinion based on information derived from other sources, provided that such evidence was not acquired directly or indirectly for the first time from a communication made during the course of a court-ordered examination.

Here, defendant has not pointed to any instance in the record in which the prosecution presented evidence, through the psychiatrist's testimony, that was acquired for the first time from a communication derived from defendant's mental processes during the course of the court-ordered examination.

With respect to defendant's contention that the testimony was improper because the psychiatrist had an insufficient foundation to give an opinion, we note that an expert witness may base an opinion on facts or data which is not admissible into evidence, provided that it is of the type reasonably relied upon by experts in the particular field. CRE 703.

Here, defendant does not argue that forensic psychiatrists do not reasonably rely upon police reports, witness statements, videotaped interviews, and the reports of other experts in forming an opinion as to whether an individual suffers from battered woman's syndrome or post-traumatic stress disorder. In addition, because the psychiatrist disagreed with the conclusions of defendant's experts, she did not impermissibly base her conclusions on the opinions of other experts. *See People v. Beasley,* 43 Colo.App. 488, 608 P.2d 835 (1979).

We therefore perceive no reversible error in the trial court's order allowing the psychiatrist to testify as a rebuttal witness.

### B.

Defendant also contends that the trial court improperly limited the scope of cross-examination and impeachment of the psychiatrist. We agree in part.

Defendant points to three areas in which the court limited cross-examination and impeachment. The first concerns the psychiatrist's role in another criminal trial in which defendant's counsel had also been involved. Although the trial court permitted cross-examination concerning the psychiatrist's role in that other case, defendant asserts that the court erred in prohibiting use of a memorandum prepared by the psychiatrist in which she made strategy suggestions to the prosecution and gave her opinion concerning certain defense witnesses. Defendant contends that this memorandum reveals the psychiatrist's bias in favor of the prosecution in criminal cases.

■ A trial court has wide latitude in placing reasonable limits upon cross-examination based on concerns including harassment, prejudice, confusion of the issues, relevance, and presentation of cumulative evidence. Nevertheless, it is constitutional error for a trial court to limit excessively a defendant's cross-examination of a witness regarding credibility, especially concerning bias, prejudice, or motive for testifying. *Merritt v. People,* 842 P.2d 162 (Colo.1992).

Here, because the memorandum concerned the psychiatrist's involvement in another case, it was, at most, only marginally relevant. Moreover, the trial court allowed liberal cross-examination on the subject of the psychiatrist's involvement in the other criminal trial generally. Thus, defendant had ample opportunity to explore any possible bias on the part of the psychiatrist.

We therefore conclude that the trial court did not abuse its discretion in excluding this evidence.

Defendant next asserts that the trial court improperly limited the scope of cross-examination by prohibiting defendant from questioning the psychiatrist about a default judgment obtained against her, the entry of a contempt order against her for failure to appear, and the resulting issuance of a warrant for her arrest. The judgment, contempt citation, and warrant all stemmed from a fee dispute the psychiatrist had with a lawyer in another case. Defendant contends that this evidence served to impeach the witness's credibility and qualifications as a forensic expert.

The trial court excluded the evidence under CRE 403, stating that its presentation would lead to confusion of the facts. Such ruling was within the court's permissible scope of discretion. *See People v. Walker*, 666 P.2d 113 (Colo.1982).

Finally, defendant argues that the trial court erred when it sustained the prosecution's objection to defendant's attempting to call in surrebuttal two criminal defense lawyers who had previous experience with the psychiatrist. We agree.

The credibility of a witness may be attacked by evidence in the form of opinion or reputation testimony. This evidence may refer only to the witness' character for truthfulness or untruthfulness. CRE 608(a).

Here, defendant sought to introduce evidence pertaining to the psychiatrist's character of untruthfulness. The evidence was to be in the form of opinion and reputation testimony by two criminal defense lawyers who had worked with the witness in the past.

The trial court ruled that the evidence was not relevant because the psychiatrist's truthfulness was not at issue since she was merely testifying as to her expert opinion and was not a fact witness. However, because CRE 608(a) makes no exception for expert witnesses, we conclude that the trial court's ruling was erroneous.

An error that infringes upon a defendant's rights under the confrontation clause of the Sixth Amendment requires reversal unless it is harmless beyond a reasonable doubt. *Merritt v. People, supra*. Likewise, when a trial court improperly prevents the defendant from calling a witness to impeach a prosecution witness with testimony that the witness' reputation for truthfulness is poor, the reviewing court must determine whether the error is harmless. *Honey v. People*, 713 P.2d 1300 (Colo.1986).

Here, the psychiatrist's testimony was not crucial to the prosecution's case because other expert witnesses also testified that the results of defendant's psychiatric tests suggested that she did not suffer from battered woman's syndrome or post traumatic-stress disorder. Also, the trial court had permitted extensive cross-examination of the psychiatrist. Moreover, there was other evidence overwhelmingly supporting the verdict and overcoming defendant's theory of self-defense, including evidence that defendant shot her husband while he was sleeping, tried to cover up the homicide instead of reporting it, and stood to receive a large amount of insurance money upon his death. *See Honey v. People, supra*.

For these reasons, we conclude that the error was harmless beyond a reasonable doubt.

### III.

Defendant next contends that the trial court erred in refusing to give certain tendered jury instructions. We disagree.

### A.

First, defendant urges that the trial court's self-defense instruction was inadequate.

The trial court gave the following instruction.

It is an affirmative defense to the crimes of First Degree Murder, Second Degree Murder, and Heat of Passion Manslaughter that the defendant used deadly physical force because

1. She reasonably believed, based upon either appearances or reality, that a lesser degree of force was inadequate and

2. She had reasonable grounds to believe, and did believe, based upon appearances or reality, that she was in imminent danger of being killed or of receiving great bodily injury.

■ Defendant argues that this instruction was incomplete because it did not indicate whether the jury was to apply a subjective or objective standard in determining reasonableness. Defendant tendered three instructions to the court pertaining to reasonableness, all of which applied or suggested a subjective standard.

Here, the self-defense instruction given at trial is identical to *COLJI–Crim.* No. 7:17 (1983). Moreover, the instruction tracks, to a great extent, the language in the statute defining that affirmative defense. The statute reads, in pertinent part:

(2) Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

(a) The actor has reasonable ground to believe, and does believe that he or another person is in imminent danger of being killed or of receiving great bodily injury.

Section 18–1–704, C.R.S. (1986 Repl.Vol. 8B).

Nothing in *People v. Yaklich,* 833 P.2d 758 (Colo.App.1991), relied upon by defendant, requires that the jury be instructed that the standard for reasonableness is subjective. In *Yaklich,* a division of this court held that a self-defense instruction was inappropriate when a defendant who had been physically abused by her husband hired third parties to kill him. The division declined to decide whether a self-defense instruction is required when a woman kills her batterer in his sleep.

Here, a self-defense instruction *was* given by the trial court, and, because that instruction closely mirrors the language of the statute and the pattern jury instruction on self-defense, we perceive no error.

### B.

■ Finding no supporting authority for defendant's position, we reject her contention that the trial court erred by refusing to instruct the jury that if defendant were convicted, she would be sentenced to life imprisonment without parole.

■ Defendant also objected to the court's first instruction which informed the jury that it is the judge's duty to decide what punishment defendant should receive upon conviction. Defendant contends that the instruction given by the court was misleading because, under the applicable statutes, the court was required to sentence defendant, upon conviction of first degree murder, to life imprisonment without parole and that, therefore, the judge had no discretion in sentencing defendant.

To the extent that the instruction given by the court might have been misleading because it suggested that the court had sentencing discretion, we determine that it was, at most, harmless error. The substantial rights of the defendant were not affected, and reversal is therefore not required. *See People v. Mozee,* 723 P.2d 117 (Colo.1986); Crim.P. 52.

We therefore conclude that the trial court's refusal to give defendant's tendered instruction was not error and that any inaccuracy in the court's first instruction does not constitute reversible error.

### IV.

Defendant next contends that the trial court erred by permitting the prosecution systematically to exclude women and Hispanics from the jury without following the procedure set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). While we agree that the trial court failed to follow the procedures in *Batson,* we find no reversible error.

In *Batson,* the United States Supreme Court held that a prosecutor's use of per-

emptory challenges purposefully to eliminate prospective jurors on the basis of race is a violation of the equal protection clause of the Fourteenth Amendment. This holding was later extended to prohibit the exclusion of prospective jurors on the basis of gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

A trial court should follow a three-step process in evaluating claims of racial or gender discrimination in jury selection. *Batson v. Kentucky, supra; People v. Cerrone*, 854 P.2d 178 (Colo.1993).

First, the defendant is required to make out a *prima facie* case of discrimination. Then, the burden shifts to the prosecution to articulate a neutral explanation for excluding the juror or jurors. Finally, if the prosecution is able to articulate a neutral reason for the exclusion, defendant should be given an opportunity to challenge the prosecution's showing. The court must then determine whether defendant has carried the burden of proving purposeful discrimination. *People v. Cerrone, supra.*

A defendant makes a *prima facie* showing of purposeful discrimination by demonstrating that the jury selection process provided an opportunity for discrimination and that members of a cognizable racial group were substantially underrepresented on the jury. *People v. Cerrone, supra.* A group is cognizable if it is defined by race, national origin, religion, or gender. *Fields v. People*, 732 P.2d 1145 (Colo.1987).

Here, the trial court failed to follow the three step procedure of *Batson.* Several times during selection of the jury, the trial court failed to rule on whether defendant had made a *prima facie* showing of purposeful discrimination. The court also allowed the prosecution to articulate neutral reasons for the exclusion of certain jurors without finding that defendant had made a *prima facie* showing.

However, we conclude that the trial court properly determined, under the circumstances here, that defendant failed to make a *prima facie* showing of purposeful discrimination based on race or gender. As the trial court noted, the final jury included six indi-viduals with Hispanic surnames and nine women, including alternates. Thus, defendant failed to show that members of a cognizable group were underrepresented on the jury.

Accordingly, we find no reversible error and no need for a remand.

## V.

Defendant next contends that the trial court erred in permitting cumulative misconduct by the prosecutor during closing arguments. We disagree.

The prosecutor objected fifteen times during defendant's closing argument. Three of these objections were sustained. Defendant contends that the objections were baseless and designed to interrupt the flow of defense counsel's closing argument.

Defendant also takes exception to certain remarks made during the prosecution's rebuttal closing. These remarks include references to defense counsel's "courtroom antics," "belittling of witnesses," and "speech making," and to defendant's experts as "hired witnesses," and "expensive experts." Defendant also contends that the prosecutor improperly stated his personal opinion as to the guilt and character of the accused and misled the jury as to the prosecution's burden of proof. Defendant, however, failed to object to any of these remarks at trial.

When the prosecutor stated that the defendant "hired a team of persons to come in here and convince you with everything they say that she should be found not guilty," the court sustained defendant's objection and instructed the jury that everyone has a right to present a defense.

Finally, during the prosecution's rebuttal closing the following exchange took place.

*Prosecutor:* Is this a picture of someone who has been unjustly accused of a crime, who should be found not guilty, or the picture of someone who's been caught red-handed and is doing her level best to sweep up her tracks, to get you to believe . . .

*Defense Counsel:* I object, its a racist remark against Native Americans. It's a racist remark.

*The Court:* Ladies and gentlemen, you make a decision as to what the remark may or may not have been.

*Prosecutor:* This is not a personality contest about lawyers involved in this case or any kind of nonsense they may say in front of you.

*Defense Counsel:* I move that be stricken, Your Honor.

*The Court:* Overruled.

*Prosecutor:* It's not about the antics of a defense lawyer who sometimes acts like an overwrought circus barker. That's what . . .

*The Court:* No, ladies and gentlemen . . . let's not have any personal attacks on anyone involved in this case. Ladies and gentlemen, you are not to consider that last remark. . . .

■ While the prosecutor's comment comparing defense counsel to "an overwrought circus barker" was clearly inappropriate, *see* ABA, *Standards for Criminal Justice,* Standard 3–5.2(a) (3d ed. 1992), it appears to have been made in response to an unfounded charge of racism. "Red-handed," rather than referring to Native Americans, means "fresh from committing murder, having the hands red with blood." *New Shorter Oxford English Dictionary* 2511 (L. Brown ed. 1993). In any event, the court ordered the prosecutor's comment stricken, as it did as to the remark about defendant's "hired" experts.

■ Curative instructions are generally sufficient to overcome error and are inadequate only when a prosecutorial remark is so prejudicial that, but for the comment, the jury might not have found the defendant guilty. *People v. Carrier,* 791 P.2d 1204 (Colo.App.1990).

■ As for the prosecutor's other remarks, because defendant failed to object at trial, they do not require a reversal unless they amount to plain error affecting the substantial rights of the defendant. A prosecutor's improper remarks do not constitute plain error under Crim.P. 52(b) unless they are flagrant, glaring, or tremendously improper. *People v. Constant,* 645 P.2d 843 (Colo.1982). These remarks do not rise to that level.

Some of the prosecutor's remarks were improper; however, they must be considered in light of all the evidence and the trial as a whole. *People v. Hood,* 878 P.2d 89 (Colo. App.1994).

Here, the prosecutor's objections and remarks came at the end of a very lengthy, emotional trial. Under all the circumstances, we cannot conclude that they amounted to cumulative misconduct constituting reversible error.

## VI.

Finally, defendant asserts that the trial court erred in refusing to allow her to comment, during closing argument, on the prosecution's failure to call a certain witness. Again, we disagree.

Evidence was presented during the trial that defendant's boyfriend had bought the gun used by defendant in the homicide and that he had been with defendant when she learned to use it. The defense subpoenaed the boyfriend to testify, but he asserted his privilege against self-incrimination and was thus unavailable. Defendant made an offer of proof that this witness would have testified that defendant informed him of specific instances of abuse by her husband, that he advised her to buy a gun so that she could defend herself, and that he went with her to a shooting range so she could practice using it.

Defense counsel sought to comment in closing argument on this witness' absence from the trial, arguing that the prosecution could have ensured his presence by granting him immunity pursuant to § 13–90–118(3), C.R.S. (1987 Repl.Vol. 6A). The court denied defendant's motion on the basis that much of the witness' testimony would have been inadmissible hearsay.

■ Statutory immunity is available only upon court order at the request of the prosecution. *Harding v. People,* 708 P.2d 1354 (Colo.1985). Comment on a missing witness is appropriate only when the witness' absence is due solely to the actions of the prosecution. *People v. Raibon,* 843 P.2d 46 (Colo.App.1992).

■ When a witness is unavailable as a result of the assertion of the Fifth Amendment privilege against self-incrimination, it is·

the action of the witness, not the prosecution, which prevents the testimony from being heard. *People v. Raibon, supra.*

Although *Raibon* dealt with this issue in the context of a missing witness instruction given by the court, we find that the analysis in that case also applies when the defendant seeks to comment on the absence of a witness. We further conclude that there is no requirement that the prosecution grant immunity in order to make a witness available to be called by the defense.

Accordingly, we hold that the trial court did not err in refusing to allow defendant to comment on adverse inferences arising from the prosecution's failure to call the witness at trial.

The judgment of conviction is affirmed.

PLANK and HUME, JJ., concur.