The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jacob R. VALDEZ, Defendant–Appellant.

No. 95CA0756.

Colorado Court of Appeals, Div. V.

Feb. 6, 1997.

As Modified on Denial of Rehearing May 15, 1997.

Certiorari Granted Nov. 24, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Jacob R. Valdez, appeals the judgment of conviction entered on a jury verdict finding him guilty of theft from an at-risk adult, attempted theft from an at-risk adult, two counts of second degree burglary, two counts of criminal impersonation, and of being an habitual criminal. We affirm, but remand for correction of the mittimus.

### I. *Batson* Challenge

Defendant contends that he made out a *prima facie* showing of racial discrimination based on the prosecutor's use of peremptory challenges against African–American venire members. He bases this contention on: (1) the prosecutor's comments and questions during voir dire; and (2) the statistical pattern of prosecutorial peremptory challenges against African–American venire members.

Alternatively, defendant contends that the issue whether he made out a *prima facie* case has been mooted by the trial court's findings and by the prosecutor's attempted justification for challenging a venire member. Based on this alternative contention, defendant asserts that the trial court misapplied the *Batson* process and violated the separation of powers doctrine by assisting the prosecutor in stating race-neutral reasons for two peremptory challenges. We are not persuaded.

### A. *Batson* Standard

Under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), courts use a three-part test to determine whether a prosecutor's peremptory challenge violates the Equal Protection Clause. In step one, the defendant must make a *prima facie* showing that the prosecutor excluded a prospective juror on account of race. The trial court determines whether such a *prima facie* showing was made. *People v. Cerrone*, 854 P.2d 178 (Colo.1993).

If the defendant succeeds in making a *prima facie* showing, then the court proceeds to step two which requires the prosecutor to state a race-neutral explanation for excluding the prospective juror. *See People v. Marion*, 941 P.2d 287 (Colo.App.1996). The trial

court must afford defendant an opportunity to rebut the prosecutor's race-neutral explanation. *See People v. Mendoza,* 876 P.2d 98 (Colo.App.1994).

Thereafter, the trial court must make a finding of fact whether defendant proved racial discrimination (step three). *People v. Cerrone, supra; People v. Marion, supra.*

**B.** *Prima Facie* Showing of Discrimination

Defendant asserts the trial court abused its discretion in concluding he had failed to make out a *prima facie* showing of racial discrimination. According to defendant, such a showing is supported both by the prosecutor's statements and questions during voir dire, and by the pattern of peremptory strikes against African–American venire members. We disagree.

Recent decisions announced by the United States Supreme Court, our supreme court, and divisions of this court have refined the *Batson* analysis. *See Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Cerrone v. People,* 900 P.2d 45 (Colo.1995); *People v. McCoy,* 944 P.2d 577 (Colo.App.1996); *People v. Marion, supra; People v. Burke,* 937 P.2d 886 (Colo.App.1996); *People v. Baker,* 924 P.2d 1186 (Colo.App.1996); *People v. Davis,* 935 P.2d 79 (Colo.App.1996); *People v. Saiz,* 923 P.2d 197 (Colo.App.1995), *cert. denied,* ––– U.S. –––, 117 S.Ct. 715, 136 L.Ed.2d 634 (1997). However, these decisions have not directly addressed the means of proving a *prima facie* case based on a pattern of peremptory challenges or the prosecutor's comments and questions on voir dire.

■ Under *Batson,* a *prima facie* showing of discrimination requires defendants to show that: (1) the prosecution exercised a peremptory challenge to remove a member of a cognizable racial group from the venire; and (2) the facts and circumstances surrounding the peremptory challenge support an inference that the prosecutor sought to exclude a venire member on account of race. *People v. Cerrone, supra; People v. Gardenhire,* 903 P.2d 1165 (Colo.App.1995). The defendant need not be a member of the same cognizable group as the challenged venire

members. *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)

■ The standard of review on the *prima facie* showing issue is abuse of discretion, and therefore, a reviewing court should defer to the trial court's decision on a *Batson* challenge. *See People v. Gardenhire, supra; see also United States v. Bergodere,* 40 F.3d 512 (1st Cir.1994), *cert. denied,* 514 U.S. 1055, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995); *United States v. Vasquez–Lopez,* 22 F.3d 900 (9th Cir.1994), *cert. denied,* 513 U.S. 891, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994); *United States v. Branch,* 989 F.2d 752 (5th Cir.1993), *cert. denied sub nom. Thompson v. United States,* 509 U.S. 931, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); *United States v. Casper,* 956 F.2d 416 (3d Cir.1992); *United States v. Moore,* 895 F.2d 484 (8th Cir.1990); *United States v. Grandison,* 885 F.2d 143 (4th Cir. 1989), *cert. denied,* 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990); *People v. Henderson,* 142 Ill.2d 258, 154 Ill.Dec. 785, 568 N.E.2d 1234 (1990), *cert. denied,* 502 U.S. 882, 112 S.Ct. 233, 116 L.Ed.2d 189 (1991); *Bailey v. State,* 84 Md.App. 323, 579 A.2d 774 (1990) (fn.2); *State v. Wright,* 78 Wash.App. 93, 896 P.2d 713 (1995); *cf. Batson v. Kentucky, supra,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88 ("We have confidence that trial judges ... will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a *prima facie* case of discrimination...."). *But see State v. Sledd,* 250 Kan. 15, 825 P.2d 114 (1992), *cert. denied,* 506 U.S. 849, 113 S.Ct. 147, 121 L.Ed.2d 98 (1992); *State v. Pharris,* 846 P.2d 454 (Utah App.1993).

To the extent that *People v. Portley,* 857 P.2d 459 (Colo.App.1992) may be read to require a standard of review different from abuse of discretion, we decline to follow it.

### 1. Cognizable Racial Group

■ A cognizable racial group is defined on the basis of race. *See Fields v. People,* 732 P.2d 1145 (Colo.1987).

The venire here included 26 persons. Seven were AfricanAmericans and, therefore, were members of a cognizable racial group. *See Fields v. People, supra.*

## 2. Inference of Intentional Discrimination

■ In order to make a *prima facie* showing, defendant also was required to show that the facts and circumstances surrounding the prosecution's peremptory challenges created a discriminatory inference.

In this case, the prosecution exercised five of its available seven peremptory challenges, using three to unseat African–American venire members. Defendant's position is that these statistics along with the other circumstances reveal a systematic pattern of exclusion sufficient to make a prima facie showing. We disagree.

■ In determining whether there is an inference of intentional racial discrimination, relevant factors include: the prosecutor's questions and statements during voir dire, a pattern of challenges against jurors of a particular race, and the disproportionate impact of these peremptory challenges. *Batson v. Kentucky, supra.*

■ Under *Batson,* a systematic pattern of exclusions is neither necessary nor sufficient for making out a *prima facie* showing. *People v. Burke, supra.* However, a pattern of exclusions may be part of the totality of circumstances used to determine whether a *prima facie* showing was made. *See United States v. Alvarado,* 923 F.2d 253 (2d Cir. 1991); *Jones v. Ryan,* 987 F.2d 960 (3d Cir. 1993); *United States v. Sangineto–Miranda,* 859 F.2d 1501 (6th Cir.1988); *Turner v. Marshall,* 63 F.3d 807 (9th Cir.1995); *Cochran v. Herring,* 43 F.3d 1404 (11th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 776, 133 L.Ed.2d 728 (1996).

There is no magic number of challenged jurors that will result in a *prima facie* case. *Turner v. Marshall, supra.* As one court has noted,

[S]tatistical comparisons are ... a poor way to resolve a *Batson* challenge.... A battle of the numbers on an appeal is no substitute for the district court's assessment of the conduct of the government at trial.

*United States v. Grandison, supra,* 885 F.2d at 148.

Applying those principles, the trial court here found no *prima facie* case regarding the exclusion of two of the African–American venire members because: (1) the juror questionnaire of one challenged venire member stated that he had a family member who had been convicted of a crime; and (2) the second African–American venire member repeatedly had demonstrated a strong desire to avoid jury service. The court also observed that the third African–American venire member challenged by the prosecutor was replaced by another African–American, and that four African–Americans were included in the final jury panel. These findings are supported by the record, and may not be disturbed on review. *See People v. Gardenhire, supra.*

In addition, because of the particular jury selection system used, the prosecutor knew which jurors would be replacing those excused and he accepted the jury, which included four African–American jurors, without using his last two peremptory challenges. These factors further negate any inference of discrimination. *See People v. Saiz, supra; see also United States v. Willie,* 941 F.2d 1384 (10th Cir.1991), *cert. denied,* 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992); *United States v. Sangineto–Miranda, supra.*

■ Defendant points to the prosecutor's conduct during voir dire as additional evidence of a racially discriminatory intent. The prosecutor commented to the venire members that:

[Prosecutor:] Everybody has a different life experience. We have different cultures. We have different standards, all of those things, and you bring those in here with you....

One of the principal issues that you hear quite a bit about, and you probably have heard about it since some of you may be listening to the O.J. Simpson case—

[Trial Court:] I told you couldn't talk about that in here....

[Prosecutor:] I'm not going to discuss the O.J. Simpson case, but one of the issues that sometimes does come up in a courtroom is whether or not an individual can be fair and impartial regarding perhaps the race of a person, the prosecutor or defense attorney, or anything of that na-

ture. Really the racial issue in your deliberations is not something that you have to consider. . . . We're only going to ask you to be fair and impartial, but if there is in your background something that you really feel that—in this case, the Defendant happens to be Hispanic, the prosecutor is Hispanic, ... the defense counsel is black. If there's something racial, just be candid with us. If you don't feel you can be fair because of a particular issue, let us know. Just be candid with us, because, you know, life outside is not a sterile environment.

Defendant characterizes these comments by the prosecutor as indicating a "misplaced fear that minority jurors are unable to be impartial because they will sympathize with a minority defendant or defense counsel."

In further support for his argument, defendant emphasizes the fact that the prosecutor questioned an African–American venire member on the ability to be fair, but did not ask the same question of a similarly situated non-African–American venire member.

Insofaras defendant emphasizes the prosecutor's brief reference to the O.J. Simpson case, we note that the trial court immediately interjected and admonished the prosecutor against further comment on that case. And, we find nothing improper in the prosecutor's statements quoted above. Further, the trial court witnessed the entire voir dire and did not find a racial motive in the prosecutor's remarks or in the questioning of particular jurors. *Cf. People v. Baker, supra* (defense counsel's questioning of potential juror on her racial views did not demonstrate racial bias under *Batson* and its progeny). The trial court was in the best position to observe these particular colloquies and to evaluate demeanor. We therefore defer to its assessment as to whether the prosecutor's conduct demonstrated discriminatory intent. *See People v. Gardenhire, supra.*

In summary, the trial court did not abuse its discretion in finding that defendant had failed to make out a *prima facie* showing under *Batson. See People v. Gardenhire, supra; see also People v.Cerrone, supra; People v. Saiz, supra.*

## C. Mootness and Related Claims of Error

■ Alternatively, defendant argues that the trial court rendered moot the issue whether he had made a *prima facie* showing of discrimination by stating a race-neutral justification for a peremptory challenge, and by permitting the prosecutor to state his reasons for striking one prospective juror. Thus, defendant argues, because the *prima facie* issue became moot, the trial court was required to proceed to the second and third parts of the *Batson* process and to make appropriate findings which it failed properly to do. We reject the defendant's claim of mootness.

■ If the prosecutor offers a race-neutral explanation and the trial court rules on the question of intentional discrimination, the preliminary question whether the defendant had made out a *prima facie* showing is moot. *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *People v. Davis, supra.*

However, here, the trial court found that defendant had failed initially to make a *prima facie* case. Before ending the *Batson* inquiry, the court then requested the prosecutor to state his reasons for challenging one prospective juror solely for the record. Thus, because the trial court's purpose in allowing the prosecutor's explanation was simply to complete the record, and because it did not make findings on the ultimate question of racial discrimination, the issue whether defendant had made a *prima facie* showing is not moot. *See Hernandez v. New York, supra; People v. Davis, supra; see also People v. Arrington,* 843 P.2d 62 (Colo. App.1992).

Because we have rejected defendant's mootness argument, we necessarily reject his related assertion that the trial court was required to proceed through the *Batson* process and to allow the prosecutor to state a race-neutral justification. *See People v. Burke, supra. See also People v. Saiz, supra* (trial court's failure to follow *Batson* procedure in precise detail not reversible error when ultimate finding of no *prima facie* case was supported by the record).

## II. Variance Between Instruction and Information

■ Defendant next contends the trial court erred in instructing the jury on the offense of theft from an at-risk adult. We disagree.

■ An information must sufficiently advise a defendant of the charges so that he or she can prepare an adequate defense and be protected from further prosecution for the same offense. However, the prosecution is prohibited from requiring a defendant to answer a charge not contained in the charging instrument. *People v. Rodriguez,* 914 P.2d 230 (Colo.1996).

■ Thus, when a defendant is charged with one crime and the jury is instructed on the elements of another, a resulting conviction cannot stand. *People v. Jefferson,* 934 P.2d 870 (Colo.App.1996).

■ Nevertheless, a technical defect in an information does not require reversal unless the defendant's substantial rights are prejudiced. Defendants are entitled to reversal only if they are prejudiced, surprised, or hampered in preparing and presenting their defenses. *People v. Rodriguez, supra.*

Here, the information contained the following pertinent language:

> That on or about the 27th day of July, 1994, at the City and County of Denver, State of Colorado, [defendant] did unlawfully and feloniously attempt to commit the crime of THEFT against [the victim], and did engage in conduct constituting a substantial step toward the commission of said crime, as defined by C.R.S. 18–4–401, as amended; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the People of the State of Colorado.
> *CRIMINAL ATTEMPT TO COMMIT THEFT FROM AN AT RISK ADULT, 18–2–101, as amended* (Class 4 felony)

While the count specifically referenced § 18–4–401, C.R.S. (1986 Repl.Vol. 8B), the general theft statute, and also § 18–2–101, C.R.S. (1986 Repl.Vol. 8B), which defined "attempt," the count did not specifically refer to § 18–6.5–101, et seq., C.R.S. (1996 Cum.

Supp.), which proscribe crimes against at-risk adults.

The count was never formally amended and the jury was later instructed as follows:

> The elements of the crime of Criminal Attempt to Commit Theft From An At–Risk Adult are:
> (1) That the defendant,
> (2) in the City and County of Denver, State of Colorado, on or about the 27th day of July, 1994,
> (3) with the intent to commit the crime of Theft From An At–Risk Adult, [the victim],
> (4) knowingly and with intent
> (5) engaged in conduct constituting a substantial step toward the commission of Theft From an At–Risk Adult.

The instruction stated that the victim of the attempted theft was an at-risk adult. The information did not. Defendant thus contends that: (1) the variance between the information and the instruction violated Crim. P. 7(e), which governs amendments to an information; and (2) this violation effectively modified an essential element of the charged offense.

We conclude, however, that the information's designation of the offense as "CRIMINAL ATTEMPT TO COMMIT THEFT FROM AN AT RISK ADULT …." was sufficient to provide defendant with notice of the charge. In any event, defendant has failed to show any prejudice from the variance between the information and the jury instruction.

Throughout the trial, the prosecution demonstrated its intent to prosecute defendant for attempted theft from an at-risk adult. And defendant's theory of defense was a general claim of misidentification, which would have been equally applicable regardless of how the information stated the elements of the offense. Accordingly, the language in the information did not hamper defendant's ability to prepare an adequate defense. *See People v. Rodriguez, supra.*

*People v. Jefferson, supra,* which was decided during the pendency of this appeal, does not suggest a contrary result. There,

the information charged Jefferson with second degree assault based on his alleged use of a deadly weapon. After the presentation of evidence, the prosecution sought to amend the information to reflect a different legal theory regarding the offense. Under this theory, the elements of the offense did not require proof that Jefferson had used a deadly weapon.

Because he had no notice of the new theory, Jefferson presented his defense based on the original information, his defense failed to address evidence pertinent to the new theory, and he was convicted. Under those circumstances, a division of this court held that he had made a sufficient showing of unfair surprise and prejudice. *People v. Jefferson, supra.*

In contrast, here, the defendant had notice of the prosecution's theory, and his defense was applicable to the offense as stated in the jury instructions.

### III. Prosecutor's Closing Arguments

Defendant next asserts that misrepresentations made by the prosecutor during closing arguments undermined the fairness of the trial. We reject his contention.

The determination whether a prosecutor's statements constitute inappropriate prosecutorial argument is within the trial court's discretion. *Harris v. People,* 888 P.2d 259 (Colo.1995).

If defendant fails to object to a prosecutor's comments, the trial court is denied the opportunity to consider what prejudice, if any, is created by the prosecutor's comments. Under such circumstances, the plain error standard of review is appropriate. *Wilson v. People,* 743 P.2d 415 (Colo.1987). Prosecutorial misconduct amounts to plain error only when there is a substantial likelihood that it affected the verdict or deprived the defendant of a fair and impartial trial. *People v. Constant,* 645 P.2d 843 (Colo.1982), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982).

Here, a victim testified that he believed defendant had burglarized his home several years before committing the charged offenses. However, the parties stipulated that because defendant was in prison at the time of the burglary, he could not have committed that crime.

During closing argument, the prosecutor stated:

> [The victim] had an experience before, three some-odd years ago. Perhaps he really is mistaken that it was the Defendant at that time. With respect to the stipulation, we did agree that [the victim] recalls it happened in February of 1991, the first incident, and we have agreed the Defendant in this case was not in Denver at that time
>
> . . . .
>
> It is basically an I.D. case but, again, [the victim] identifies the Defendant so does [another victim]. He may have said something happened to him in '91. We don't know whether it was the Defendant. We know for sure it wasn't the Defendant then.

Given the prosecutor's stipulation that defendant could not have committed the prior burglary, these comments appear to have been made mistakenly and should not have been made. Nevertheless, we conclude that the comments, when read in the context of the lengthy closing arguments, had no significant impact on the verdict and did not deprive the defendant of a fair and impartial trial. Thus, we perceive no plain error. *See Wilson v. People, supra.*

### IV. Error in Mittimus

Both defendant and the prosecution agree the mittimus incorrectly reflects that the offense of attempted theft from an at-risk adult was a class four felony. The mittimus should reflect it was a class six felony and remand is necessary to make the correction.

The judgment is affirmed, and the cause is remanded for correction of the mittimus to reflect that the count of attempted theft from an at-risk adult was a class six felony.

DAVIDSON and ROY, JJ., concur.