**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Sheland D. BAKER, Defendant– Appellant.**

No. 94CA1809.

Colorado Court of Appeals, Div. I.

July 25, 1996.

Rehearing Denied Aug. 29, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, C. Keith Pope, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Sheland D. Baker, appeals the judgment of conviction entered on a jury verdict finding him guilty of contributing to the delinquency of a minor. He also appeals the sentence imposed. We reverse and remand with directions.

Defendant was charged with multiple offenses based on allegations that he had a sexual relationship with the 12–year–old victim and had smoked marijuana with her.

During the *voir dire* examination of potential jurors, the following colloquy occurred between defendant's trial attorney and a potential juror:

[Defense counsel]: And ... I guess I need to ask a question, and that is, [defendant] is my client ... He is black. You are also. Do you feel as though black people in a situation like this are treated more harshly than other people?

[The juror]: Number one, I resent—I don't like that statement, him being black and my being black. I don't know what that has to do with this.

[Defense counsel]: Okay. Well, I think that's a fair thing to say, and I guess what I'm saying is, does this reflect your community? Does the numbers in this jury panel reflect your community, the numbers in our community?

[The juror]: I don't understand what you're saying.

[Defense counsel]: Does—out of the number of jurors that are sitting in this panel,

does one black person represent the numbers that live in this community?

[The juror]: Possibly so. I'm the only one in my neighborhood.

[Defense counsel]: Well, I guess what I'm trying to get at here is, if you found yourself sitting in—over here at this table .... and accused of doing something, would you be concerned that the color of your skin would be an issue in the case.

[The juror]: I wouldn't be.

[Defense counsel]: Okay. You're not concerned about it? You're not concerned about it at this juncture either as relates to you being a juror on this case.

[The juror]: No.

[Defense counsel]: Do you think you would look at [defendant's] conduct more harshly, less harshly, or about the same?

[The juror]: Would I look at his—

[Defense counsel]: Well, would you— would you evaluate [defendant's] conduct the same? Would you hold him to a higher standard or the same standard?

[The juror]: The same standard. I mean, he—he's a human being, he's not—I don't look at him as a color.

[Defense counsel]: Okay. Well, that's fine, and I appreciate that. I didn't mean to insult you. I just—basically, I'm trying to—my concern is not only are we talking about a sexual assault on a child we're talking about a black man that's accused of doing this, accused of doing this to someone who's non-black, okay. Does that make a difference?

[The juror]: Not necessarily.

[Defense counsel]: Do you—but do you think it has a difference?

[The juror]: I don't know. I haven't heard any of the evidence or anything. Anything....

Later, trial counsel sought to use a peremptory challenge to excuse the prospective juror. The prosecutor objected, and after hearing arguments from both sides, the trial court ruled that, because the juror in question was the only African–American venire member, and because trial counsel had raised racial questions during *voir dire*, the per-emptory challenge was race-based and thus prohibited.

Following trial, defendant was found guilty of contributing to the delinquency of a minor. He was found not guilty of each of two counts of sexual assault in the second degree and on one of two counts of sexual assault on a child. Because the jurors were unable to agree on a verdict for the second count of sexual assault on a child, it was dismissed.

I.

Initially, we reject defendant's contention that, as a matter of law, it cannot be deemed unlawful racial discrimination for him to use a peremptory challenge to unseat a potential juror who is a member of the same racial group as he. Defendant asserts that it would be absurd and irrational to conclude that an African–American defendant harbors racial prejudice against other African–Americans. He argues that the only prohibited racial stereotype addressed by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and its progeny is the presumption that persons of the same race will "stick together" and support a defendant (or victim) of their own racial group. We are not persuaded.

*Batson* did not limit its prohibition of race based peremptory challenges to those founded on a prejudicial belief that jurors will be partial to parties of their own race. Rather, the Court has recognized that "race prejudice stems from various causes and may manifest itself in different forms." *Powers v. Ohio*, 499 U.S. 400, 416, 111 S.Ct. 1364, 1374, 113 L.Ed.2d 411, 429 (1991); *see also People v. Cerrone*, 854 P.2d 178 (Colo.1993)(fn.16).

■ To the contrary, the majority opinion in *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) specifically concludes that any racial discrimination in the jury selection process violates the rights of the excluded jurors and fundamentally undermines the integrity of the judicial process.

■ In addressing the precise issue raised by defendant, the Indiana Court of Appeals affirmed a trial court's denial of an African–American defendant's attempted use of a

peremptory challenge to unseat the only venire member of the same race, reasoning that:

> In *Batson* the [Supreme Court] observed that the discriminatory use of peremptory challenges harms the prospective jurors and undermines the public confidence in the fairness of our system of justice. Consequently, a juror may not be denied the right to participate in jury service based merely on the juror's race or ethnic identity. It is of no consequence that the challenged prospective juror is of the same race as or ethnic identity as the challenger. *The question is whether the peremptory challenge is being used to remove a prospective juror on prohibited grounds* ....

*Currin v. State,* 638 N.E.2d 1319, 1322 (Ind. App.1994). (emphasis added). We agree with and adopt that reasoning as our own. *See also Ezell v. State,* 909 P.2d 68 (Okla.Cr.1995) (holding that it was racially discriminatory for an African–American defendant to use a peremptory challenge to unseat a juror of the same race).

We are unpersuaded by defendant's prediction that prohibiting race-based peremptory challenges of venire members who are of the same race as the challenging party will leave "every peremptory challenge in every case ... subject to a *Batson* objection." Rather, we view the procedural requirements listed in *Batson* and refined in *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), and *Purkett v. Elem,* 514 U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) as adequate to resolve the issues. To the extent that additional procedures are required, "[i]t remains for the trial courts to develop rules, without unnecessary disruption of the jury selection process, to permit legitimate and well-founded objections to the use of peremptory challenges as a mask for racial prejudice." *Powers v. Ohio, supra,* 499 U.S. at 416, 111 S.Ct. at 1374, 113 L.Ed.2d at 429.

## II.

■ Courts must use a three-part analysis to determine when a peremptory challenge violates the Equal Protection Clause. First, the party objecting to the peremptory challenge must make a *prima facie* showing that the proponent of the peremptory challenge seeks to exclude a prospective juror based on race. Second, if a *prima facie* showing has been made, the burden shifts to the proponent to articulate a race-neutral explanation for excluding the juror in question. Third, if the proponent demonstrates a race-neutral explanation, then the trial court must determine whether the objecting party has proved that the peremptory challenge is based on purposeful racial discrimination. *Hernandez v. New York, supra; People v. Cerrone, supra.*

### A.

■ Defendant argues that the prosecutor failed to make out a *prima facie* case of racial discrimination. We disagree.

Defense counsel attempted to use a peremptory challenge to strike the only venire member of a cognizable racial group. This was sufficient. *See People v. Portley,* 857 P.2d 459 (Colo.App.1992).

### B.

■ In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. *Hernandez v. New York, supra.*

At this stage, it is not necessary that the race-neutral justification contain even a plausible basis for believing that a particular member of the venire would not be an effective juror. *Purkett v. Elem, supra.* Thus, unless a discriminatory intent is inherent in the proponent's explanation, the reason offered will be deemed race-neutral. *Hernandez v. New York, supra; see also Cerrone v. People,* 900 P.2d 45 (Colo.1995).

In this context, " 'discriminatory purpose ... implies more than intent as volition or intent as awareness of consequences. It implies that the [proponent of the challenge] ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable

group.'" *Hernandez v. New York, supra,* 500 U.S. at 360, 111 S.Ct. at 1866, 114 L.Ed.2d at 406 (quoting *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870, 887–888 (1979)).

Here, trial counsel justified his challenge as follows:

> Your Honor, basically the reason for the challenge was my exchange with [the potential juror] did not go well.... I asked her a number of questions. I probably didn't handle the race issue as well as I could have .... but her responses to me made it clear that she disliked me; that she resented the fact that I even asked her those questions. I don't know what would motivate me to exclude the only juror that is black from this panel in the absence of something that is not at all relating to the color of her skin. And that's exactly what happened here. Our exchange did not go well. Obviously upset her and made her angry. I'm afraid that her being angry with me would be translated into taking it out on my client. So for those reasons— this is not a situation where I simply didn't ask her any questions and as we were going through the preemptory challenges I excuse her, several questions, asked her delicate questions that perhaps I didn't handle very well. It is for those reasons that I decided to exercise a peremptory challenge....

> ....

> I think there are neutral reasons, sometimes gut feelings based on a non-verbal response. She did seem to react negatively towards me for even raising the issue. I'm assuming that I handled it poorly, but I am not sure that that's necessarily the case. She's the only black juror that I'm aware of on this panel period. And I basically raise that as an issue with her, basically how she felt about that, as well as how that might impact how she viewed my client. And to that she—she indicated to me that she—at least the impression that I got that she resented me bringing it up at all. And based on that I believe that she

would not be the best juror to hear this case.

Counsel's justification suggests that the ultimate reason for making the challenge was based on the juror's resentment of the questions. Under these circumstances, racial discrimination was not inherent in the explanation offered. *See Purkett v. Elem, supra.*

### C.

Defendant contends that the trial court misapplied the law to the facts in determining that the challenge was based on purposeful discrimination. We agree.

■ After the proponent of the challenge has offered an explanation, the trial court must determine as a matter of historical fact whether the objecting party has established that the challenge is based on purposeful discrimination. *Batson v. Kentucky, supra; People v. Cerrone, supra.*

It is during this part of the process that the persuasiveness of the proponent's justification becomes relevant. And, it is here that "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett v. Elem, supra,* 514 U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839.

■ These are questions of fact, and a trial court's findings on such questions are given deference by a reviewing court. *Hernandez v. New York, supra; People v. Cerrone, supra; see also People v. Gardenhire,* 903 P.2d 1159 (Colo.App.1995). However, when such a finding is based on an incorrect legal standard the finding need not be accorded any deference. *United States v. Bentley–Smith,* 2 F.3d 1368 (5th Cir.1993).

During the discussion concerning the peremptory challenge, the trial court stated:

> But, more importantly, and I think the issue that I'm concerned about is that if it was in fact a—a difficult exchange standing alone or because of some—some other reason, perhaps, you know, the way you— you cut your hair or the color of your tie or the way—the type of suit you wear or something like that, I would be much less concerned, but the whole exchange that

you're concerned about really was based upon racial type issues to begin with.

. . . .

It was—it went right towards racial issues. And so it seems to me that those become—those issues become intertwined.

Your concern about her reaction to the question is intertwined with the fact that the question was about race to begin with, and I guess that's my concern. I mean, I'll allow you to address that, but that's the way I'm—you know, it's coming across to me.

After further argument, the trial court ruled:

All right. I've considered this matter, and I find that the challenge was racially motivated in this case. I think it was intertwined with racial motivation. I think that it basically is a—would be a violation of her civil rights to have her excluded from the jury for that reason. And I do not find that the exchange between defense counsel and my observation of the exchange was near as problematic as counsel has indicated.

I would state for the record that I did observe an initial reaction by her when the issue was first raised, but in the Court's opinion she mellowed considerably after that and after the matter was discussed further. So I feel that under the circumstances the challenge is racially motivated. And, therefore, I'm going to deny the challenge. . . .

The record shows that "racial type issues" were involved in the questioning of the juror and that there was a temporal and topical relationship between these questions and the juror's responses. However, in our view, the facts that the questions had a racial subject matter and that the manner in which they were answered was "intertwined" with that subject matter do not establish that defense counsel engaged in prohibited racial discrimination.

■ Under Colo. Const. art. II, §§ 16 and 25, defense counsel had a right and an obligation to inquire into the racial views of the venire members in the interest of obtaining a fair and impartial jury. *See Maes v. District Court*, 180 Colo. 169, 503 P.2d 621 (1972); *see also People v. White*, 632 P.2d 609 (Colo.App.1981); *see generally* Annotation, *Racial or Ethnic Prejudice of Prospective Jurors as Proper Subject of Inquiry or Ground of Challenge on Voir dire in State Criminal Case*, 94 A.L.R.3d 15 (1979). The Supreme Court has recognized that: "Voir dire examination serves the dual purpose of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431, 111 S.Ct. 1899, 1908, 114 L.Ed.2d 493, 509 (1991).

■ Here, the trial court did not use the appropriate legal standard. It determined that, because race-related questions had been asked during *voir dire*, the exercise of a peremptory challenge was *ipso facto* race-based and therefore prohibited.

■ Ordinarily, the appropriate procedure in such circumstances would be to remand the cause for more detailed findings. A new trial would be required only if the trial court, on remand, determined that no other basis existed on which to find that trial counsel had engaged in discrimination. *See People v. Portley, supra.*

However, because the judge who presided over the trial is no longer in office, that procedure is unavailable. *Cf. In Re Marriage of Eaton*, 894 P.2d 56 (Colo.App.1995)(removal of trial court judge during pendency of appeal necessitated new hearing for further factual findings to be made). Thus, we must conclude that defendant is entitled to a new trial. *See Harris v. People*, 113 Colo. 511, 520, 160 P.2d 372, 377 (1945); *see also United States v. Bentley–Smith, supra* (fn.7); *but see United States v. Annigoni*, 68 F.3d 279 (9th Cir.1995) (*en banc* rehearing granted, January 10, 1996).

### III.

Because defendant's remaining contentions of error are either moot or are unlikely to arise on retrial, we decline to address them.

The judgment is reversed and the cause is remanded for a new trial.

CRISWELL and JONES, JJ., concur.