**Carla CRAIG and Dennis Craig, Petitioners**

v.

**Hillis G. CARLSON, M.D., Respondent.**

No. 06SC99.

Supreme Court of Colorado,
En Banc.

June 25, 2007.

Jim Leventhal, Benjamin Sachs, Leventhal, Brown & Puga, P.C., Denver, CO, Attorneys for Petitioners.

Craig A. Sargent, Johnson, McConaty & Sargent, P.C., Glendale, CO, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## Introduction

Two judges were assigned to Petitioners Carla and Dennis Craig's medical malpractice case against Respondent Dr. Hillis Carlson. One judge conducted the trial ("trial court") and the other conducted the pre-trial and post-trial motions ("successor court"). During the course of jury selection, the Craigs objected that Carlson was exercising his peremptory challenges discriminatorily to remove women from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Carlson responded that *Batson* does not apply to cases of gender discrimination and furthermore, that he had not realized that he had used his first four strikes to eliminate women from the jury. The trial court overruled the plaintiffs' *Batson* objection based on its erroneous conclusion that *Batson* does not apply to gender discrimination. As a result, it never conducted a *Batson* hearing.

In ruling on the Craigs' motion for a new trial, the successor court concluded that the trial court erred when it stated that *Batson* does not apply to gender discrimination. It also concluded that the Craigs had established a prima facie case of gender discrimination, thus shifting the burden to Carlson to give a nondiscriminatory reason for exercising the peremptory challenges.

The successor court conducted a *Batson* hearing approximately three months after the trial. At this hearing it heard argument from counsel and reviewed the juror questionnaires and the transcripts of the jury selection. Carlson provided several nondiscriminatory reasons for striking each of the four female jurors. Facts in the juror questionnaires and the record of jury selection supported Carlson's reasons for striking all four of the female jurors. Only Carlson's assertion that the third stricken juror nodded her head in agreement with another juror's statements was not reviewable from the record available to the successor court. Carlson, however, offered additional reasons for striking that juror that the juror questionnaires confirm.

At the conclusion of the hearing, the successor court concluded that Carlson met his burden to articulate a gender-neutral explanation for exercising the four peremptory strikes against women and that the Craigs did not meet their burden of proving gender discrimination. Hence, the successor court denied the motion for a new trial.

The Craigs appealed this decision and the court of appeals affirmed the successor court's holding. The court of appeals held that a successor court has discretion to rule on a *Batson* issue in a post-trial motion for a new trial. It reasoned that a successor court could, in this case, remedy the trial court's error in failing to conduct a *Batson* hearing by conducting such a hearing itself after the conclusion of the trial. We granted certiorari to review the unpublished court of appeals decision, *Craig v. Carlson*, No. 04CA0142, 2005 WL 2305020 (Colo.App. Sept.22, 2005).

We conclude a successor court may decide *Batson* issues when it conducts a post-trial *Batson* hearing at which it can assess the peremptory challenger's credibility when providing his nondiscriminatory reasons for striking specific jurors, and the trial transcripts and juror questionnaires sufficiently confirm the existence of the peremptory challenger's proffered reasons. If the court cannot make the determination from the record, however, the successor court does not have discretion to conduct the *Batson* analysis, and the case must be remanded for a new trial.

Our review of the record indicates that the successor court was able to conduct its own *Batson* analysis in this case. The successor

court held a hearing only three months after the trial at which it heard argument from both of the parties. The successor court's review of the trial record of jury selection and the juror questionnaires confirmed at least one of Carlson's proffered nondiscriminatory reasons for striking each of the female jurors. Thus, the successor court did not abuse its discretion when it conducted the *Batson* analysis. Hence, we affirm the judgment of the court of appeals.

## I. Facts and Procedural History

The Craigs filed a medical malpractice case against Dr. Carlson, alleging that he was negligent in failing to properly examine and diagnose Mrs. Craig with rectal cancer. Prior to trial, the Craigs filed a motion to expedite the trial because of Mrs. Craig's terminal illness.

The court granted the Craigs' motion to expedite the trial and as a result, assigned the trial portion of the case to a visiting senior judge. The judge who initially had been assigned to the Craigs' case handled the pre-trial and post-trial motions. As a result of this dual assignment, both judges ruled on the Craigs' objection that Carlson used his peremptory challenges to discriminate against women during jury selection in violation of *Batson*, 476 U.S. at 79, 106 S.Ct. 1712. The trial court rejected the Craigs' *Batson* challenge as inapplicable, but the successor court found that *Batson* applied and conducted a *Batson* hearing.

The trial court addressed the Craigs' *Batson* objection during jury selection after Carlson used the first four of his five peremptory challenges to eliminate women from the panel. The Craigs argued that Carlson's challenges violated *Batson's* prohibition against discriminatory jury selection because he was striking jurors on the basis of gender. The trial court erroneously ruled that *Batson* does not apply to gender discrimination and concluded that Carlson's peremptory challenges were proper without conducting a *Batson* hearing.

After the jury returned a verdict in favor of Carlson and the judgment entered, the Craigs filed a motion for a new trial restating their *Batson* challenge. Pursuant to the court's initial case management order, the successor court ruled on the motion for a new trial instead of the trial court. The successor court made two preliminary findings. First, it found that the trial court erred when it concluded that *Batson* did not apply to gender discrimination. Second, it found that the Craigs had made a prima facie showing of gender discrimination. Hence, the question became whether Carlson could proffer a nondiscriminatory reason for striking the female jurors.

The successor court scheduled a "brief hearing per *Batson*" to determine whether the Craigs could establish gender discrimination in jury selection. Approximately three months after the trial's conclusion, the successor court held a *Batson* hearing at which it reviewed the transcripts of jury selection and juror questionnaires and heard argument from the parties.

The transcript of the jury selection contains Carlson's initial response at trial to the Craigs' *Batson* objection. Initially, Carlson questioned the Craigs' peremptory strikes: "He got rid of two women, at least, and three men ... the same rationale applies. Why is he getting rid of men?" He then argued that *Batson* only applies to challenges based on ethnicity, not gender. Carlson also stated that he had not realized he was striking women only. Neither party provided further argument at this time due to the trial court's erroneous conclusion that *Batson* does not apply to gender discrimination.

At the hearing conducted by the successor court, Carlson provided at least one nondiscriminatory reason for striking each of the four female prospective jurors. As support for each nondiscriminatory reason, Carlson referenced either the juror's testimony as reflected in the trial transcript of jury selection or the juror's answer on the jury questionnaire.[1] (Juror L.S.: wrote negligent doc-

---

1. With regard to the first female juror struck, L.S., Carlson directed the successor court's attention to the juror questionnaires, stating that he struck L.S. because she indicated that "if

[physicians are] negligent, they must be punished." He also referenced several comments she made during jury selection that were more aligned with the Craigs' theories and directly

tors must be punished; Juror D.A.: father had colon cancer; Juror K.M.: friend had colon cancer and is cured; Juror S.L.: mother died of lung cancer). The only nondiscriminatory reason not supported by the record or juror questionnaires was one of the reasons Carlson offered for his third strike, Juror K.M.

Carlson stated that he eliminated K.M. in part based upon her agreement with Juror L.S. (the first stricken juror) when she was talking about not making assumptions and that doctors should have a report confirming the diagnosis before relying on the diagnosis of specialists. He could not, however, remember whether K.M. indicated this agreement with a nod of the head, a raised hand, or a smile. It was at this point that he admitted "that's the only thing in my notes that probably won't be reflected on the jury questionnaire or in the transcript." In addition to this reason, Carlson also stated that he struck K.M. because she had a friend with colon cancer, a fact confirmed in K.M.'s juror questionnaire.

The Craigs contested the reasons Carlson offered for striking the female jurors as being pretextual, arguing that if Carlson's explanation were true, other male jurors should

have been struck instead because their answers during jury selection raised greater concern. The Craigs' main argument, however, focused on Carlson's elimination of K.M. The Craigs argued that the successor court was unable to adequately assess one of the reasons Carlson proffered for striking her because that judge was not present at trial, that there was no record to support what occurred, and that the court thus could not "evaluate the credibility of what [Carlson] is saying as far as the nod goes:"

> If, in fact, as [Carlson] claims, she had nodded in agreement with [L.S.], why didn't he ask questions about it? Nobody asked questions about it. There's no record to support that whatsoever.

The Craigs argued that only the trial court could conduct the *Batson* hearing. They stated that the analysis requires the court to "take into consideration the circumstantial evidence, including [Carlson's] statements at the time and everything else in this case." The successor court disagreed.

The successor court stated that it was not handicapped by not conducting the trial because it had access to the juror questionnaires and the trial transcript of jury selec-

---

contrary to his theory of defense. Carlson's attorney highlighted L.S.'s comments that she believed rectal bleeding was cancer until proven otherwise; that doctors should not make assumptions; and that doctors cannot rely on other specialists' diagnoses unless they have something written down that confirms the diagnosis:

> She also had, though, during questioning, a number of comments that concerned me. Primarily, first of all, she said that—or—agreed with [the Craigs' attorney] that rectal bleeding is cancer until proven otherwise. That was something she learned in nurse's training and that all medical people are taught. She also said two things that were really concerning to me; first of all, that doctors—and Dr. Carlson specifically—should not make assumptions and ... that doctors and Dr. Carlson couldn't rely on the diagnosis of her made by other specialists unless they had something written down confirming that diagnosis.

Our review of the record shows that L.S. made each of the statements to which Carlson referred.

The second juror stricken was D.A. The juror questionnaire indicated that her father had colon cancer, and that doctors caught it in its early stages. Carlson explained that one of his strategies was to get rid of everyone "who had any sort

of life experience with colon cancer, whether it was personal experience, a family member, or a friend" because he thought those people having had such experience would align more with the Craigs.

Carlson argued the same reasoning with regard to his third strike, K.M. K.M.'s juror questionnaire indicated that she had a friend that had colon cancer who "was treated and has been free of cancer since then." Carlson again stated that he "thought that she may relate to or empathize or sympathize with the [Craigs] in that regard ... And the fact that the friend was now cancer free, where [Mrs. Craig] wasn't, led [him] to believe that she would probably have some level of expectation that ... went against what [they were] dealing with in this case."

The final female juror that Carlson struck was S.L. The juror questionnaire reflected that S.L. had a family member with a life threatening disease. S.L.'s mother had died of lung cancer. Carlson argued that because S.L. had stated during jury selection that she had cared for her mother during the last five months of her life, he was concerned that S.L.'s experience with watching someone die from cancer would cause her to empathize or sympathize with the Craigs. The trial transcript contains S.L.'s testimony reflecting this situation.

tion and had the benefit of counsel's argument:

> Obviously, I was not the trial judge.... I don't see that as a handicap. I do have these questionnaires, I do have access to the transcript, I've had the benefit of the argument of Counsel, and we've taken an extensive period of time here and I don't mean improper time, but just Counsel have taken their time in explaining all of the answers of jurors that they thought were important and so forth, so I see no handicap or that it's more difficult for me to rule on this issue than it would be for the judge at the trial.

The successor court further explained that it did not have to determine whether the jurors reacted as the parties argued they did. It only needed to determine whether Carlson believed the jurors reacted in a way justifying Carlson's use of the peremptory challenge:

> For example, what I'm saying is as to [one of the female jurors Carlson struck], whether she nodded or not—obviously, if I'd been the trial judge, I might have an opinion .... but that's not important.... This is not a place where I need to resolve that as some sort of disputed issue of fact. The issue is the attorney exercising the peremptory—did he, in fact, believe that this person nodded?

The successor court then determined that Carlson's reasons were facially neutral and adequate to rebut the prima facie showing of purposeful discrimination. The successor court found that the Craigs did not meet their burden of proving gender discrimination by a preponderance of the evidence. The successor court further stated that it was able to determine that Carlson was candid, and that had it not been able, it would have granted the motion for a new trial. Hence, the jury verdict was undisturbed.

On appeal, the court of appeals affirmed the successor court's *Batson* ruling. *Craig*, slip op. at 30, 2005 WL 2305020. It held that the successor court had discretion to rule on

the post-trial *Batson* motion and did not abuse its discretion when ruling on the Craigs' motion for a new trial. *Id.* at 9. The court stated that "access to the transcript, together with the information provided at the hearing, enabled the successor [court] to fully and properly evaluate the question of purposeful discrimination." *Id.* The court of appeals further concluded that the successor court's *Batson* hearing remedied the trial court's error and deferred to the successor court's findings of fact regarding Carlson's proffered reasons for striking the female jurors. *Id.*

We granted certiorari on the issue of whether the court of appeals erred when it concluded that a successor court's *Batson* hearing cures an original trial court's error in not conducting a *Batson* hearing.[2]

## II. Analysis

■ It is well-established that the Equal Protection Clause of the Fourteenth Amendment prohibits discriminatory jury selection. *Batson*, 476 U.S. at 86–87, 106 S.Ct. 1712; *Valdez v. People*, 966 P.2d 587, 589 (Colo. 1998). While *Batson* involved a prosecutor's use of peremptory challenges in a racially discriminatory way in a criminal trial, its principles extend to peremptory challenges exercised in a way that reflects gender discrimination in a civil trial. *J.E.B. v. Alabama*, 511 U.S. 127, 128–29, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (applying Batson to gender discrimination); *Valdez*, 966 P.2d at 589 n. 9 (same); *Donelson v. Fritz*, 70 P.3d 539, 543 (Colo.App.2002) (same); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 629, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (applying Batson to civil cases). Because we agree with the court of appeals' and successor court's conclusions that *Batson* applies to the alleged discriminatory jury selection in this case—alleged gender discrimination—the issue before this Court is whether a successor court abuses its discretion when it holds a post-trial *Batson* hearing to cure a

---

**2.** We granted certiorari on the issue: "Whether the court of appeals erred when it held that a successor judge's Batson hearing remedied the original trial court's error, as a matter of law, in overruling the Petitioner's objection to defense counsel's use of peremptory challenges to strike four female prospective jurors."

trial court's erroneous ruling that *Batson* does not apply.

### Successor Court's Discretion to Conduct Post–Trial *Batson* Analysis

■ A successor court has discretion to rule on motions for a new trial. C.R.C.P. 63; *Faris v. Rothenberg*, 648 P.2d 1089, 1091 (Colo.1982). "[I] f [a successor court] is satisfied that [it] cannot perform [post-trial] duties because [it] did not preside at the trial or for any other reason, [it] may in [its] discretion grant a new trial." C.R.C.P. 63. The successor court's decision will be reviewed under an abuse of discretion standard to determine if the successor court's actions were manifestly arbitrary, unreasonable, or unfair. *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 166–67 (Colo.1993). The issue in this case is whether the successor court was able to rule on the Craigs' motion for a new trial such that it did not abuse its discretion by doing so. We conclude that the successor court's ruling was proper.

■ *Batson* requires trial courts to conduct a three-step analysis to determine whether the opponent of a peremptory challenge has proven the existence of purposeful discrimination in jury selection under the Equal Protection Clause. *Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712; *Valdez*, 966 P.2d at 589. Meeting the first two steps of this analysis is not difficult. *Valdez*, 966 P.2d at 590. To satisfy the first step, the court need only find that the opponent of the peremptory challenge presented evidence sufficient to establish a prima facie case of discrimination which requires that the opponent's argument raise an inference that discrimination occurred. *Id.* Once this inference is raised, the court evaluates the peremptory challenger's proffered reasons for striking the jurors. While the court cannot accept a proponent's bare denial of a discriminatory motive, it need not find the proponent's explanation persuasive or even plausible, so long as it is facially neutral. *Id.* (citations omitted). Unless discriminatory intent is inherent in the proponent's explanations, the reasons offered will be deemed neutral. *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion); *Peo-*

*ple v. Baker*, 924 P.2d 1186, 1189 (Colo.App. 1996).

■ If the court finds that the proponent proffered a facially neutral reason for striking the juror, the court then moves to the third step of the analysis, evaluating whether the opponent of the strike has proven purposeful discrimination. *Valdez*, 966 P.2d at 590. Prior to making this determination, the court must give the opponent an opportunity to rebut the proponent's neutral reason for exercising the strike. *Id.* Once this is done, the court then reviews all of the evidence to decide the ultimate question of whether, by a preponderance of the evidence, one or more potential jurors were excluded because of a discriminatory reason. *Id.*

■ The critical question underlying the court's ultimate conclusion is whether the proponent's neutral explanation of the peremptory challenge is credible. *Hernandez*, 500 U.S. at 365, 111 S.Ct. 1859; *Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). To answer this question, the court must evaluate the proponent's credibility as to the proffered neutral explanation, *Miller–El*, 537 U.S. at 340, 123 S.Ct. 1029, and determine whether it is "more probably true than not" that the proponent of the challenge excluded the potential juror for a discriminatory reason. Colo. CJI–Civ. 4th 3:1(3) (defining preponderance of the evidence). The court can measure credibility by considering, among other factors, the proponent's demeanor, how reasonable or improbable the explanations seem, and whether the proffered rationale has some basis in accepted trial strategy. *Miller–El*, 537 U.S. at 339, 123 S.Ct. 1029.

■ Ordinarily, when a trial court has not adequately conducted the *Batson* analysis, the appropriate procedure is to remand the case for more detailed findings by the trial court. *People v. Trujillo*, 15 P.3d 1104, 1106 (Colo.App.2000); *Middleton v. Beckett*, 960 P.2d 1213, 1215 (Colo.App.1998). Here, however, the successor court conducted the *Batson* analysis because the case could not be remanded to the trial court. Hence, the issue is whether the successor court abused

its discretion by conducting the *Batson* hearing even though it did not conduct the trial.

▉ Turning to the first two steps of the *Batson* analysis, we conclude that the successor court was able to conduct this portion of the *Batson* analysis because the standards for establishing the prima facie case and proffering a nondiscriminatory reason for exercising the peremptory strikes are easily satisfied. First, the successor court's record review was sufficient to determine that the Craigs had raised an inference that gender discrimination occurred, establishing a prima facie case. The successor court was able to review Carlson's pattern of strikes, how many female jurors were on the jury before and after these strikes, and the initial response of both parties when the Craigs first raised the *Batson* objection. Second, Carlson provided the court with reasons for striking each of the female jurors at the post-trial *Batson* hearing which the court could adequately consider and find facially nondiscriminatory.

The more difficult question is whether the successor court was able to conduct the third step of the *Batson* analysis—to evaluate Carlson's credibility in order to determine whether it was "more probably true than not" that the Carlson excluded the four potential female jurors for discriminatory reasons. As previously stated, the successor court was not present during the trial or jury selection. However, the successor court did conduct a post-trial hearing approximately three months after the trial where it heard argument from both parties. Hence, the successor court was able to supplement its review of the juror questionnaires and trial transcript of jury selection with the parties' argument at the hearing held only three months after the trial. *See People v. Johnson*, 38 Cal.4th 1096, 45 Cal.Rptr.3d 1, 136 P.3d 804, 807 (2006) (remanding a case to a different judge to conduct a *Batson* hearing and noting that the judge on remand "will have the trial record, including the juror questionnaires, to assist in conducting the second and third *Batson* steps").

By holding a post-trial hearing, the successor court was able to assess Carlson's credibility regarding his reasons for the strikes. While it is preferable for the same court conducting jury selection to make credibility determinations with regard to jurors' reactions, counsel's questioning, and counsel's rapport with the jurors and court, these types of credibility determinations are not required on the facts of this case. Here, the trial transcript and juror questionnaires confirm at least one of Carlson's proffered nondiscriminatory reasons for striking each of the female jurors, enabling the successor court to conduct the entire *Batson* analysis without abusing its discretion. This conclusion is further supported by the successor court's statement at the hearing that it was able to determine that Carlson was candid, and that had it not been able, it would have granted the motion for a new trial.

The only nondiscriminatory reason that the successor court could not confirm based upon the information before it was K.M.'s alleged nod, raised hand, or smile in agreement with another juror. Because the successor court did not conduct the trial, it did not observe this non-verbal response. This is, however, of little consequence in this case because Carlson also provided a nondiscriminatory reason for striking K.M. that was documented in the juror questionnaire—that she had a friend with colon cancer. Hence, we agree with the court of appeals that the successor court's "access to the transcript, together with the information provided at the hearing, enabled the successor [court] to fully and properly evaluate the question of purposeful discrimination." *Craig,* slip op. at 9.

▉ We note that when a successor court cannot confirm a proponent's credibility in offering a nondiscriminatory reason through the record or through jury questionnaires, a new trial is warranted.[3] In such a case, the successor court cannot assess the

---

**3.** To the extent that several court of appeals' opinions suggest that a new trial is required per se when the trial court is unavailable to conduct a post-trial *Batson* hearing, we disagree. *See Trujillo,* 15 P.3d at 1106 (citing *Baker,* 924 P.2d 1186); *Baker,* 924 P.2d at 1191 (ordering new trial when presiding trial judge not available to rule on *Batson* challenge). This determination must be made on a case-by-case basis.

witness' credibility and the weight to be given the testimony presented:

A successor judge, although standing in the shoes of the original trial judge, is at a disadvantage. Not having been present during the trial, the successor judge is handicapped in his ability to assess the credibility of witnesses and the weight to be given the testimony presented.... Accordingly, it would be difficult to rule on a motion for a new trial which challenges the sufficiency of the evidence where the credibility of witnesses is involved.

*Faris,* 648 P.2d at 1091–92. A successor court's inability to assess a credibility issue is a proper ground for granting a new trial. 12 Matthew Bender, *Moore's Federal Practice,* § 63.05(6)(a) (3d ed.2006). This, however, is not the case here.

Because we conclude that the successor court did not abuse its discretion in this case when it conducted the post-trial *Batson* hearing, we affirm the judgment of the court of appeals.[4]

### III. Conclusion

Our review of the record indicates that the successor court was able to conduct its own factual analysis with regard to the Batson challenge in this case. The successor court held a hearing only three months after the trial at which it heard argument from both of the parties. The successor court's review of the trial record of jury selection and the juror questionnaires confirmed at least one of Carlson's proffered nondiscriminatory reasons for striking each of the female jurors. Thus, the successor court did not abuse its discretion when it conducted the Batson analysis. Hence, we affirm the judgment of the court of appeals.

---

4. We need not address the merits of the successor court's *Batson* analysis because we did not grant certiorari on this issue.